THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* DAN S. RICHARDS, Appellant.

A structure above ground, arranged and intended solely as a place for the permanent interment of the dead, is not a "building" within the meaning of the provisions of the Penal Code (§§ 498, 504), defining the crime of burglary in the third degree, nor is it an "erection or enclosure" within the provision (§ 504), specifying what the term "building," as used in the chapter in relation to burglary includes; and an indictment for that offense cannot be sustained by proof of the breaking and entering such a structure.

The phrase "erection or enclosure," as so employed, *it seems* refers to structures of the character used by mankind for the purpose of sheltering or transferring property, or of trade or commercial intercourse.

*People* v. *Richards* (44 Hun, 278) reversed.

(Argued December 14, 1887; decided January 17, 1888.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made April 30, 1887, which affirmed a judgment of the Court of Oyer and Terminer of Broome county, entered upon a verdict, convicting the defendant of the crime of burglary in the third degree. (Reported below, 44 Hun, 278.)

The material facts are stated in the opinion.

*Louis Marshall* for appellant. Under the provisions of the Penal Code a violation of sepulture, which involves the opening of a place for the burial of the dead, is not punishable as a burglary, but must be prosecuted under the statutes making such an offense penal. (1 Bishop's Crim. Law, § 506 ; 2 id.

§§ 1188–1190; Sedgwick on Const. and Stat. Con. 366; Potter's Dwarris on Stat. 193; *Hall* v. *Western Trans. Co.*, 34 N. Y. 284, 287; *Matter of D. & H. Canal Co.*, 69 id. 212; *Benton* v. *Wickwire*, 54 id. 226; *Purdy* v. *People*, 4 Hill, 402, 403; *Matter of Yates*, 4 Johns. 359; *Newell* v. *People*, 7 N. Y. 97.) The vault which the defendant is charged to have broken and entered being used for the interment of the dead is not a "building" within the meaning of §§ 498 and 504 of the Penal Code and is not, therefore, the subject of burglary. (Bishop on Statutory Crimes, § 98.) The general words "building, erection and inclosure" used in §§ 498 and 504 refer to structures *ejusdem generis* with those particularized. (Bishop on Stat. [2d ed.] § 245; Sedgwick on Const. and Stat. Cons. 359; *In re Hermance*, 71 N. Y. 481; *People* v. *N. Y. & M. B. R. Co.* 84 id. 565; *Reg.* v. *Whitnash*, 7 B. & C. 596; *St. Louis* v. *McLaughlin*, 49 Mo. 559; *Reg.* v. *Reed*, 28 Eng. L. & Eq. 133; *Blanford* v. *Morrison*, 15 Q. B. 724; *Reed* v. *Ingham*, 3 El. & Bl. 889; *State* v. *McGarry*, 21 Wis. 496; *East Oakland* v. *Skinner*, 94 U. S. 255; *Williams* v. *Golding* L. R. 1 C. P. 69 : *State* v. *Pemberton*, 30 Mo. 376; *Rex* v. *Garratt*, 6 C & P. 369; *Rex* v. *Harris*, 7 id. 446; *State* v. *Sumner*, 10 Vt. 587.) The term "building" as actually construed and defined by the various authorities refers to structures which have a capacity to contain and are intended for the habitation of man or animals or the sheltering of property or for purposes of trade, manufacture or agriculture. (*McGarry* v. *People*, 45 N. Y. 154; *Queen* v. *Labadire*, 32 U. C. Q. B. 429; *Elsmore* v. *Inhabitants of St. Briavells*, 8 B. & C. 461; *State* v. *Barr*, 39 Conn. 41; *Truesdale* v. *Gay*, 13 Gray, 311; *Coddington* v. *Beebee*, 31 N. J. Law, 477; *Lothian* v. *Wood*, 55 Cal. 159; *La C. & M. R. R. Co.* v. *Vanderpool*, 11 Wis. 119; *Powell* v. *Baraston*, 18 C. B. [N. S.] 175; *Powell* v. *Farmer*, id. 167; *Stevens* v. *Gourley*, 7 id. 199.)

*J. McGuire* for appellant. A grave for burying the dead by whatever name called, whether catacomb, tomb, vault

or sepulchre, or however constructed, is not a building, within the meaning of the statute, capable of being burglarized. (Bishop on Stat. Crimes, § 292 ; *La Crosse, etc.,* v. *Vanderpool,* 11 Wis. 121 ; Penal Code, §§ 498, 504.) A change of phraseology or a change of division in subjects in a revision of the statutes will not alter the law as it before existed, unless it plainly appears that such was the intention of the legislature. (*Theriot* v. *Hart,* 2 Hill, 380 ; *Matter of Brown,* 21 Wend. 316 ; *Elwood* v. *Clock,* 13 Barb. 50 ; *Dominic* v. *Michaud,* 4 Sandf. 374 ; *Taylor* v. *De Lancey,* 2 Caine's C. 143 ; *Case of Yates,* 4 Johns. 317.) Where a statute mentions or specifies a particular class of persons, objects or things, or other person or thing, the words " or other " refer to the same class of persons or things specified or enumerated. (*Regina* v. *Evanston,* 2 E. & E. [105 E. C. L.], 83 ; *In re Hermance,* 71 N. Y. 487 ; *Landiman* v. *Breach,* 7 B. & C. 96 ; Broom's Legal Max., § 25 ; *Elliot* v. *Bishop,* 10 Exch. 4, 96, 113.) The only change in the definition of burglary, made by the Penal Code defining burglary in the third degree, is the substitution of the word " crime " for the word " felony " and the omission therefrom of the words " in which any goods, merchandize or valuable thing shall be kept for use, sale, deposit or transportation," so that it is not now necessary to aver or prove that the structure broken into contained any goods, etc., for sale, etc. (Bishop on Stat. Crimes, § 98.) In the interpretation of a statute the language is. to be understood in its common signification; general terms are to receive their general, not restrictive, sense. (Bishop on Stat. Crimes, §§ 102, 191, 193, 195, 196, 198, 199.) The law has made full and ample provision for the prosecution and punishment of a person who opens a grave or other place of interment, or of a building where a dead body awaits interment, without resorting to a law of burglary. (Penal Code, § 313.) In common parlance a place for the burial of the dead is not known as a building or a structure, an entry into which constitutes burglary, nor has it been so characterized in law heretofore. (Bishop on Stat. Crimes, § 292.)

*Geo. B. Curtiss* and *Nathaniel C. Moak* for respondent. The indictment and evidence establish burglary in the third degree. (Penal Code, §§ 498, 504; 1 R. L. of N. Y. 408; 2 R. S. [1st ed.] 668; 4 id. 855.) The Phelps' vault was a building within sections 498 and 504 of the Penal Code. (Webster Dict.; Wharton's Law Dict.; 11 Wis. 214; 10 Penn. St. 416; 41 Me. 370; *People* v. *Stickman,* 34 Cal. 242; *Fisher* v. *State,* 43 Ala. 17; Hawk's P. C. Ch. § 17; 2 Russell on Crimes, 25.) The breaking and entry being with an intent to commit a crime, was burglary in the third degree. (*Queen* v. *Manning,* L. R., 1 C. C. R. 340; Annandale's Dict.; Schmidt, Shakespere Lexicon; Stormouth's Dict.; Encyclopaedic Dict. by Rob't Hunter; Latham's Johnson's Dict.; Ogilivie's Imp. Dict.; *Thomas* v. *Smith,* 42 Penn. St. 68, 72, 73; *Rex* v. *Morris,* Russell & Ryan, 69; *Olmstead* v. *McNeal,* 7 Blackf. [Ind.] 387–389; *Morish* v. *Harris,* L. R. 1 C. P. 155; *Stevens* v. *Gourley,* 7 C. B. [N. S.] 112; *Powell* v. *Farmer,* 18 id. 169, 174.) Defendant's acts were an offense against property. (2 T. R. 734; 4 East 465; Russell on Crimes [9th ed.] 638; *Rex* v. *Chase,* 4 B. & C. 902; *Kanavan' Case,* 1 Me. 226; Resco's Crim. Ev. 422; *Comm.* v. *Slack,* 19 Pick. 30; *Com.* v. *Loring,* 8 id. 370; *Comm.* v. *Cooley,* 10 id. 37; *Reg.* v. *Sharp,* 7 Cox C. C. 214.) The gravestone, casket, cement, slab, lead and cement encasements and materials injured and destroyed by the defendant are property. (4 Bradf. 503; Bouvier's Law Dict. on "Heir Looms" and Fixtures; 2 Black. Com. [Sharswood] 426; 2 Wait's Actions and Defenses, 224; 1 Washburn on Real Prop. 6; 4 N. H. 415.) Both under the laws of the State of New York and at common law a civil action can be maintained for any defacement or injury done to such materials as defendant destroyed. (4 Brad. 519, 520; 3 Edw. Chan. 164; Coke Lit. 18 B; Gibson's Code, 544; Cro. Jac. 367; *Haynes' Case,* 12 Coke, 113; 39 Maryland, 361; 66 Penn. 411; 55 Maryland, 5; *Spooner* v. *Brewster,* 3 Bing. 136; *Phillips* v. *State,* 29 Texas, 226; *Comm.* v. *Viall,* 2 Allen, 512.)

PECKHAM, J.   The defendant was charged in the indictment. with having committed the crime of burglary in the third degree in that on the 23d day of October, 1884, with force and arms in the night time, at the city of Binghamton, he broke and entered the granite and stone building, erection and inclosure, known as the Phelps vault, the same being a building, erection and inclosure for the interment of the dead, and being the property of, etc.   Upon the trial the People proved that this vault was made of granite at a cost of $5,000.   It was built. entirely above ground on a stone foundation, and the structure was ten feet four inches wide, sixteen feet four inches long, ten feet six inches high and covered with a granite roof.   The entrance was by a granite door protected by a bronze gate. The interior of the vault, immediately inside of the interior granite door has a compartment about six feet in depth and eight feet across, and is unoccupied.   At the rear of this compartment there is a partition across the width of the vault and behind that partition the bodies are inclosed.   There are twelve compartments, or graves, as they are described by one of the witnesses, and seven of these graves were occupied at the time of the commission of the alleged burglary by the defendant.   In front of each grave was a marble slab bearing the name and date of death and the age of the occupant. Other evidence was given in the case connecting the defendant with the commission of the act of breaking into this structure and examining the dead body of Robert S. Phelps which was therein contained.   His purpose in doing so it is not material to inquire in regard to, under the view which we take of the statute as to burglary.

At the close of the case for the People, defendant's counsel asked the court to direct or advise the jury to find a verdict of not guilty in behalf of the defendant Richards upon the grounds :

*First.* That the acts proven in this case are not within the provisions of the Penal Code.

*Second.* Upon the ground that the vault or grave is not a building within the meaning of the statute which is capable of being burglarized.

*Third.* That the proof in the case wholly failed to sustain the offense charged in the indictment.

The court denied the motion and held that it was a case for the jury. We think the court erred in that decision. · We do not believe that the structure described in the indictment and the proof is within the statute describing the crime of burglary in the the third or any degree. As was stated by ANDREWS, J., in *People* v. *Rogers* (86 N. Y. 360), "burglary at common law is an offense against the habitation of men." It may also be stated that the crime of burglary, even at common law, extends to the felonious breaking and entering a church. (3 Inst. 64 ; 1 Hale's Pleas of the Crown, 556 ; 1 Hawks. Pleas of the Crown, chap. 38, § 17 ; 2 Russell on Crimes, 1 ; *Regina* v. *Baker*, 3 Cox's Cr. Cases, 581 ; 2 Wharton's Cr. Law, § 1556.) Lord COKE was of the opinion that the crime could be committed in regard to a church because, as he said, it was the mansion house of the Omnipotent God. Lord HALE said that was only Lord COKE's quaint way of putting it, and that burglary at common law could be committed by breaking and entering, not only a mansion house, but a church, as a church, and without speaking of it as the mansion house of God.

It will be seen upon examination that there were two exceptions at common law to the general rule that burglary consisted in breaking into a mansion-house, the word mansion being synonymous in that respect with dwelling-house. Those two exceptions were, first, in regard to a church, and second, in regard to breaking through the walls or gates of a town. It was however, primarily an offense committed against a man's house, his dwelling, and in the night time. The Revised Laws of the state defined burglary without dividing it into degrees. By the Revised Statutes burglary in the third degree was made to consist of breaking and entering with intent to steal or to commit any felony. The exact terms of the statute are as follows : " Every person who shall be convicted of breaking and entering in the day or in the night time. (1.) Any building within the curtilage of a dwelling-house but not form-

ing a part thereof ; (2.) Any shop, store, booth, tent, ware-house
or other building in which any goods, merchandise or valuable
thing shall be kept for use, sale or deposit, with intent to steal
therein or to commit any felony, shall upon conviction be
adjudged guilty of burglary in the third degree." (2 R. S.,
669, § 17.) From the time of the passage of the Revised
Statutes up to 1863, the crime stood as therein defined. By
chapter 244 of the Laws of 1863, the above section was
amended by inserting in the second subdivision, after the
words " or other building," the words, " or any railroad car,
shop, vessel or canal boat." We think it plain that all the
words used in the Revised Statutes or in the statute of 1863,
in defining burglary in the third degree, referred to structures
erected or built for the purpose of answering the necessities
of living men in their intercourse with each other of a trading or
commercial nature, where their property might be deposited and
used or while awaiting sale or transportation. Hence the Revised
Statutes in describing the crime of burglary in the third
degree, or the act of 1863 above mentioned, did not cover
such a case as is presented by this indictment and proof ; and if
this were all there was in the case we think there would scarcely
be room for argument on this subject. Great weight, however,
is laid by the learned counsel for the People on the language
used in the Penal Code. That statute in defining burglary in
the third degree enacts as follows (§ 498) : "A person who
either,     (1.) With intent to commit a crime therein, breaks
and enters a building, or a room, or any part of a building ; or
(2.) Being in any building, commits a crime therein and
breaks out of the same, is guilty ;of burglary in the third
degree."

Section 504 says: " The term ' building,' as used in this
chapter, includes a railway car, vessel, booth, tent, shop, or
other erection or inclosure."

There is contained in the section of the Code one alteration
in the definition of the crime, as it is made burglary to break
and enter a building with intent to commit a crime, instead
of, as in the old statute, with an intent to commit a larceny or

felony.   As section 504 does not say that the term building shall
only include such structures as are therein named, it is argued
that anything which can possibly be regarded as a building under
the broadest and most liberal signification of that term, is includ-
ded therein, or, at least, is included in the expression added
at the end of the section, " or other erection or inclos-
ure."   If this be sound, a most sweeping enlargement of the
generally accepted idea of the nature of the crime of burglary
is accomplished in a statute which has been regarded more in
the light of a codification of the body of the criminal law than
as materially altering and enlarging its scope and nature.   We
do not believe in this instance that any such result was contem-
plated by the legislature.   Leaving section 504 for a moment
out of view, the crime of burglary is defined as a breaking
into a building with intent, etc., and the question arises as to
the meaning of the word " building."   Finding it used in a
statute defining burglary, two courses suggest themselves :
(1) to regard the term as limited to those structures which
the common law as amended and enlarged by our statutes rel-
ative to the crime, made capable of being broken and entered
burglariously ; or, (2), to take the widest signification which has
ever been given to the term building, and hold that every
structure within such meaning is within the statute, provided it
could be physically broken and entered.   We are persuaded
that the first course is the true one.   We are unable to believe
that the legislature meant to accomplish so radical a change in
the nature of this crime by the use of language, which, by its
context, is capable of a much more restricted meaning and
one which is fully in accord with the nature of the crime as
known to the common law and to our statutes down to the
adoption of the Penal Code.   The slight alteration made by
the Code as to the intent which is to accompany the breaking
and entering, from an intent to steal or to commit any felony,
to an intent to commit any crime, does not militate, as we
think, against this reasoning, for that alteration is of compar-
atively slight importance and does not really change the nature
of the crime.   In the absence of other and controlling reasons

we are disposed to limit the term " building " to those structures included in the common law and statutory definitions of the crime. We find at common law that burglary, so far as the character of the building was concerned, was committed by an unlawful breaking and entering of a dwelling-house. Our early statutes made the breaking and entering of such a structure in the night time with intent to commit some crime therein, when there was a human being within, burglary in the first degree, and when the entry was made in the day time, burglary in the second degree. Subsequently burglary in the third degree was made to consist in breaking any building within the curtilage of a dwelling-house but not forming a part thereof, or in breaking and entering "any shop, store, booth," etc., as already cited. It is thus seen that up to the time of the adoption of the Penal Code, the structures in regard to which burglary could be committed had been quite clearly defined, and the term "building" as used in connection with the crime of burglary had a definite and well understood meaning. To attach the same meaning to it in a statute upon the same subject, passed under the circumstances in which this Penal Code was passed, and where there is no such wide departure from the language used in the Revised Statutes or act of 1863 as to indicate a different and enlarged sense as to the meaning of the word, seems to us to be the natural and the true course to adopt. There would be no propriety in taking the most enlarged meaning anywhere given to the word and accepting it as the true sense in which it was used in this statute defining burglary in the third degree.

Now what effect upon this reasoning does a reference to section 504 have? That section simply says that the term building includes a " railroad car, vessel, booth, tent, shop," etc., and leaves out the words " in which any goods, merchandise or valuable thing shall be kept for use, sale or deposit." This omission we do not regard as very material, or as enlarging in any way the definition of the crime, for the specific words used imply substantially the same meaning which is to be

gathered from the use of the words which are omitted, and which is probably the cause of their omission. The meaning of the term "building," other than as including therein the structures specifically mentioned in the statute is still left, as we think, to be gathered precisely in the same way as it would have been if section 504 had not been passed.

We think that the term as used in these two sections of the Penal Code under discussion does not enlarge the character of the crime of burglary to such an extent as to include the structure described in this indictment and in the proof given under it. Careful and painstaking research has been exhibited in the very full briefs furnished us by counsel for the People; but they have succeeded in finding no case which would include a structure such as this within the term building in connection with any statute similar to ours in regard to burglary. We are quite sure none such can be found. Very many cases are cited by counsel on both sides as to what is included in the term "building" when used in various statutes relating to various subjects. Such, for example, as the fire law in cities; the English reform act of 1832 (§ 27) as to what sort of a building was within the section of that act as qualifying the owner or the tenant to vote; also the English act in relation to arson, as to what was a building and when it was sufficiently completed to be within the statute; also the statute in relation to mechanic's liens, as to what was a building upon which a lien could be placed. We do not think that any good can be gained by a separate consideration of each one of those cases. We have looked at them all, and the most that can be said is that each court defines the word with relation to the subject-matter of the statute which was under consideration, and the best that can be said has been said by many of the judges in those cases, which is, that it is impossible to give a general, absolute and far reaching definition or meaning to that word which shall cover all possible cases. They say they can but define the language with reference to the facts in each case and the special subject under consideration, and as determining whether in the particular case in hand the structure

in question does or does not come within the purview of the
statute.    That is all that we can do here.    Taking the law in
regard to burglary from the earliest period of the common
law where that crime is referred to, down to the present time,
we feel quite confident that not one case can be found where
breaking and entering such a structure as the one in question
has been held to come within that crime.    We simply intend
to decide this case and no other; and when we come to
examine the indictment, and the proof giving a description
of the structure, we come to the belief that it is really nothing
more than a grave above ground.    The witness speaks of these
various compartments as graves.    They are intended solely for
the interment of dead bodies, and the structure itself can be
put to no other possible use without altering its nature and
purpose.    The small room, as it is termed, in the front portion
of the structure between the outside wall and the place for the
deposit of the coffins, is used for nothing.    No services of a
religious nature could be carried on there, and language could
not be tortured into calling that place a church, or a place
for religious worship.    If instead of being placed above ground
this structure had been placed in a foundation deep enough to
receive it, and then used for the purpose of burying the dead,
and that only, could there be any question that it was not the
subject of burglary, even although sufficient of the structure
were above ground to enable one to reach it through a
door and steps?    We think not; and we do not think it
becomes a building within the statute in regard to burglary
any more  because it is placed above the ground when its sole
purpose is that it shall be used as furnishing graves for the burial
of the dead.

It is claimed, however, if this structure is not included in
the term building as used in this statute, that the words added
at the end of section 504 and already aluded to, viz., " or other
erection or inclosure," would include it.    They undoubtedly
would if the widest meaning of those words is to be taken as
within the meaning of the legislature, and if whatever could,
under other circumstances and for other purposes, be called

an erection or inclosure is to be regarded as the subject of burglary.

We do not attach any such meaning to those words when used in this connection, and we think it quite plain that the legislature never intended any such meaning. A farm lot or a vacant city lot might be inclosed with a fence and inside that fence there would be an inclosure, can it be supposed possible that the legislature intended that burglary might be committed by breaking and entering such an inclosure? In one sense, and in the widest, any thing that is inclosed is an inclosure, and the thing which inclosed it would be the thing the breaking of which and entering the inclosure would be burglary. A bronze statue in a public square is an erection, and if it be of colossal size may be broken and entered. Can any one suppose that burglary could be predicated of such an act? These are extreme cases, but they are nevertheless within the possible meaning of those terms, when such meaning is not to be arrived at and limited by an examination of the context.

It is plain that some limitation must be made to the meaning of those words other than their possible capacity when standing alone. Now there are certain rules and canons of construction in such cases as this which seem to us to serve as a perfect guide to the meaning of the language used in this statute. The rule which usually obtains in cases of this kind is that where general words follow specific words designating certain special things, the general words are to be limited to cases of the same general nature as those which are specified. The rule is familiar and needs not the citation of many authorities. One or two may be given from this court.

In the *Matter of Hermance* (71 N. Y. 481), a statute authorizing boards of supervisors " to correct any manifest, clerical or other errors in any assessments or returns," was under consideration. The question arose as to what was meant by the term " other errors." It was claimed that under that language all errors of assessments might be corrected by boards of supervisors. This court held otherwise, and

announced that the case was one for the application of the rule that when a particular class is spoken of, and general words follow, the class first mentioned is to be taken as the most comprehensive, and the general words treated as referring to matters *ejusdem generis* with such class.

Again in the case of *People* v. *N. Y. & M. B. R. R. Co.* (84 N. Y. 565), the action was brought to recover certain real property under the act of 1875, which authorized the People to bring an action to recover "money, funds, credits and property." held by public corporations, etc., wrongfully converted or disposed of; and this court held that the word "property," although its widest meaning was inclusive of all things that might be owned, yet when taken in connection with the other words used in the statutes, and in view of the surrounding circumstances under which the act was passed, it was plain that the word property was not to be given its general and enlarged meaning, but was limited to include only property of the same general character as that already mentioned in the statute, which was personal property. A late case in the House of Lords is a very strong illustration of the rule in question. The leading facts therein are as follows: A steamer was insured by a policy on the ship and her machinery, including the donkey engine. The policy covered "perils of the sea," specially naming many, and then continued, "and of all other perils, losses and misfortunes that have or shall come to the hurt, detriment or damage of the aforesaid subject-matter of this insurance or any part thereof." For the purpose of navigation the donkey engine was being used in pumping water into the main boilers, when owing to a valve being closed which ought to have been kept open, water was forced into and split open the air chamber of the donkey pump. The closing of the valve was either accidental or due to the negligence of an engineer, and was not due to ordinary wear and tear. It was held that the injury was not covered by the policy, as it was not a peril of the sea, and although it was undoubtedly a "loss or misfortune," yet the specific words in the policy which preceded this general language, it

was held, restricted the language to the same genus as the specific words which preceded it. (*Thomas, etc., Ins. Co* v. *Hamilton et al.*, 12 App. Cases, 484.) In the course of his judgment the chancellor (HALSBURY) said: "If understood in their widest sense the words are wide enough to include it (the injury); but two rules of construction now fairly established as a part of our law may be considered as limiting those words. One is that words, however general, may be limited with respect to the subject-matter in relation to which they are used. The other is that general words may be restricted to the same genus as the specific words that precede them." Opinions were delivered by three other judges, and they all concurred in the rule limiting the meaning of the language used in the policy, broad as it was, to the same class of perils as were specifically enumerated in the policy.

Applying a rule which is so well established both in England and in this country, to the case in hand, we think that the phrase " other erection or inclosure," is to be interpreted as including things of a similar nature to those already described by the specific words found in the statute. If this be so then under the phrase in question the erection or inclosure included in burglary in the third degree was to be of that character which mankind used for the purpose of sheltering property, or for the purpose of transporting the same, or the purpose of trade or commercial intercourse.

In arriving at this conclusion it is not necessary that we should also show that the act committed by the defendant subjected him to punishment as a crime of some kind. We think it was the plain intent of the law-making power to keep the distinction clear between crimes against the living and against the property of the living and crimes against public decency, in the way of desecrating the graves of the dead, or the structures whose only purpose is to be a place for the permanent interment of the dead. Offenses of this general nature are now provided for by the Penal Code, and whether the particular act of this defendant, as proved in this record, constitutes a crime, it is not necessary for us now to determine.

The law should not be stretched out of its fair and natural meaning for the purpose of including within the statute of burglary a case like this. If the legislature think proper, let the law be amended so as to include in plain terms such a case as this record discloses. The argument that the offense of burglary has been constantly enlarged from what it was at common law, and that the intention to enlarge it so as to include a case like this should be easily imputed to the legislature, we think is not sound. Whenever the offense has been enlarged in this State by the legislature it has been, by plain language, susceptible of no misunderstanding. We do not think any intent to enlarge the offense to the extent necessary to make the prisoner's act burglary can be founded upon the language used in the Penal Code.

These views lead to a reversal of the judgment of conviction, and as the defendant cannot be convicted of any crime under this indictment he should be discharged.

All concur.

Judgment accordingly.