## PEOPLE v. OTIS.

(Supreme Court, Appellate Division, Fourth Department.   March 9, 1910.)

CEMETERIES (§ 22*)—OFFENSES—INJURING MONUMENT—STATUTES—"OWNER."
    Penal Law (Consol. Laws, c. 40) § 1427, subd. 2, providing that "any person, who not being the owner thereof, and without lawful authority, willfully injures or disfigures * * * a monument * * * in a cemetery * * * is guilty of a misdemeanor," is not to be construed as though the word "sole" were before the word "owner," and so does not apply to a joint owner of a monument, who, though without right, removes an inscription therefrom.
    [Ed. Note.—For other cases, see Cemeteries, Cent. Dig. § 24; Dec. Dig. § 22.*
    For other definitions, see Words and Phrases, vol. 6, pp. 5134–5151; vol. 8, p. 7744.]
    McLennan, P. J., and Spring, J., dissenting.

Appeal from Jefferson County Court.

Charles M. Otis appeals from a judgment imposed on a verdict convicting him of violation of Penal Law, § 1427, subd. 2. Reversed, and new trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Bloodough & Woolworth, for appellant.
F. B. Pitcher, Dist. Atty., for respondent.

WILLIAMS, J.   The judgment should be reversed, and a new trial granted.

All questions of fact have been settled by the verdict of the jury in favor of the people and against the defendant. The only question here is one of law—whether the statute under which the indictment was found and defendant was tried covers this case. The defendant was

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r indexes

a joint owner of a lot and monument standing thereon in Brookside Cemetery, in the city of Watertown, N. Y. Other members of the family were joint owners with him of the lot and monument. He was not the sole owner. The statute (Penal Law [Consol. Laws, c. 40] § 1427, subd. 2) provides that:

"Any person who not being the owner thereof, and without lawful authority, willfully injures or disfigures * * * a monument * * * in a cemetery * * * is guilty of a misdemeanor."

The defendant was tried and convicted upon the theory, and instruction to the jury, that the words "not being the owner thereof" mean "not being the sole owner thereof." I think this is not a proper construction of the statute. The question is not whether the defendant had a legal right to remove the Cadwell inscription from the monument, but whether such act was a crime under this statute. It may well be that under the circumstances developed in the evidence the Cadwell inscription was properly placed upon the monument, and the defendant had no legal right to remove it therefrom. For such illegal removal the law would furnish a remedy. That is not the question here involved. When various members of a family are jointly interested in a monument, differences are liable to arise as to the rights of parties; that is, where their respective inscriptions shall be placed, and whether the names of their relatives shall be put upon the monument, etc. When these differences arise, the courts will settle them; but, if some one of the parties assumes to settle differences himself without the aid of the court, and is mistaken as to his legal rights, can it be said he is liable under this statute to punishment as for a crime? Was it the intention by this statute to make the acts of a joint owner criminal, or merely to protect the owners one or many against the acts of outsiders, persons having no interest in the monument whatever? I do not think this statute was designed to cover a case like this, where there are differences between persons jointly interested in a monument as members of a family. It does not at all follow that taking this view of the statute is equivalent to holding that any one of the interested persons may legally remove an inscription from a monument so jointly owned. The act may be illegal, and the Legislature still not have chosen to make it a crime. Criminal statutes should be strictly construed in favor of a defendant. If the Legislature intended this statute to cover all owners except sole owners, it would have been very easy to put the word "sole" in the statute. Having left it out, the construction should not be such as practically to write it into the statute.

I am aware of no decisions bearing upon this question. It is not a matter of sentiment. It is not a question whether a person may lawfully deface a monument, but whether the act if illegal is a trespass or a crime under this statute. There are many illegal acts which the Legislature has not chosen to make crimes. If they are not made crimes, they are not therefore any less illegal, and there is no right to commit such illegal acts. It will not do to say that, if we hold this statute does not cover joint owners, we thereby hold a joint owner may lawfully injure or disfigure monuments. If the statute does not cover joint owners, and it is desirable that it should do so, the Legislature

should amend it. The court should not attempt to make such amendment by a forced judicial construction. To recapitulate, a person who is the sole owner of a monument may do what he pleases to it. He may deface it, remove inscriptions from it, and mutilate it any way he sees fit, and he not only commits no crime, but no illegal act, however much he may shock the community at large. He may do as he pleases with his own. A person having no interest at all in a monument, and who defaces, disfigures, or mutilates it, is not only guilty of an illegal act, but commits a crime under this statute. A joint owner interested with others in a monument who removes an inscription therefrom under claim of right to do so, but who has no such right in fact, is guilty of an illegal act, but is not guilty of a crime under this statute.

Judgment reversed and new trial ordered upon questions of law only. All concur, KRUSE, J., with a separate memorandum, except McLENNAN, P. J., and SPRING, J., who dissent in an opinion by McLENNAN, P. J.

KRUSE, J. I concur in the opinion of Mr. Justice WILLIAMS, but desire to add a single suggestion. I think the jury could have found from the evidence that the side of the monument which was used by Cadwell had been reserved for the defendant's family. It is even claimed Mrs. Cadwell had no interest in the monument at all. Upon that subject the learned county judge charged the jury as follows:

"Whether or not Mrs. Cadwell contributed to the construction of the monument is no consequence, because, being an owner in common of the lot, that carries with it ownership in any permanent structure on the lot. For instance, if I am the owner of a farm in common with you, and you build a building on it, you have no right to remove it, it being a permanent structure, and we being owners in common of the property, without our consent. So in this case, the monument being on the lot to which she had a common ownership, she was an owner in common of the lot as well as of the monument."

I think the law of fixtures has no application to a case like this. Under the deed from the cemetery association, the lot owners acquired only a privilege or license to make interments and use the lot for cemetery purposes. Buffalo City Cemetery v. Buffalo, 46 N. Y. 503; Went v. Methodist Protestant Church, 80 Hun, 266, 30 N. Y. Supp. 157. The mere placing of the monument upon the lot did not necessarily give Mrs. Cadwell any interest therein.

McLENNAN, P. J. (dissenting). Subdivision 2, § 1427, Penal Law (Consol. Laws, c. 40), provides:

"Any person who, (2) not being the owner thereof, and without lawful authority, willfully injures, disfigures, removes or destroys a gravestone, monument, work of art, or useful or ornamental improvement, or any shade tree or ornamental plant, whether situated upon private grounds or upon the street, road or sidewalk, cemetery or public park or place, or removes from any grave in a cemetery any flowers, memorials or other token of affection, or other thing connected with them, is guilty of a misdemeanor."

The indictment charged, in substance, that said Charles M. Otis, on the 24th day of June, 1909, at the town of Watertown, in the county of Jefferson, within the Brookside Cemetery, did willfully, wrongfully,

and maliciously and without lawful authority injure, mutilate, disfigure, and deface a certain monument known as the "Otis" monument, which was upon a certain burial lot in said cemetery; he, said Charles M. Otis, not being the owner thereof.

The chief question presented by this appeal is: Was the defendant, when he committed the acts complained of, the owner of the monument in question within the meaning of the provisions of the penal law above quoted? It appears that one David D. Otis, for a long time a resident of the city of Watertown, died intestate in the year 1881. He left him surviving his widow, Sarah A. Otis, and the following children: The defendant, Charles M. Otis; David D. Otis, Jr.; Howard N. Otis; Caroline M. Otis, who afterwards married Joseph S. Greene; and Mary Frances Otis, who subsequently married Oliver B. Cadwell. At the time of his death David D. Otis, Sr., was the owner of a lot in the Brookside Cemetery, a duly incorporated cemetery association, and a deed of said lot had been executed and delivered to him by said association in the year 1864. Such deed was lost and after the death of David D. Otis, Sr., and on August 30, 1883, another deed of the lot was executed and delivered to Sarah A. Otis, his widow, and Joseph S. Greene, the son-in-law. It was a duplicate of the former deed, except as to the names of the grantees. In the year 1883, but after the execution of said last-mentioned deed, through the negotiations of Howard N. Otis, who was then manager of his father's estate, a monument was caused to be erected upon the lot in question. Such monument was a four-sided granite shaft about 12 feet high. How it was paid for does not appear, except that Joseph S. Greene, who had previously married Caroline M. Otis, paid $200 towards the expense of its erection, and the defendant, Charles M. Otis, contributed $100. Howard N. Otis and David D. Otis, Jr., also contributed, but the amounts paid by them do not appear. After the monument was erected, the name "David D. Otis" was cut on the base on the front side, which is the west side of the monument. On the northerly side of the monument was placed a letter "G" which is for "Greene," being the name of one of the married daughters. On the south side of the monument was placed the father's name, David D. Otis, and the names of his two wives, and the east side of the monument was left vacant. The family of David D. Otis, Jr., is buried at Cape Vincent, and he and his family are not interested in this controversy.

After the death of the widow, Sarah A. Otis, which occurred in 1893, and after the monument in question had been erected, and after the death of Howard N. Otis in 1895, who had managed the estate of his father until his death, there seems to have been no break in the family relations of this family. Upon the death of Howard, the other son, this defendant, apparently was charged with the duty of the management of the estate and he continued in such management for a long number of years. He was finally superseded, and the son-in-law, Oliver B. Cadwell, was substituted in his place—whether as executor, administrator, trustee, or otherwise does not appear. But it does conclusively appear that the management of the estate was taken out of the hands of the defendant and placed in the hands of Mr. Cadwell, his brother-in-law. This resulted in ill feeling between them, and to such

an extent that the defendant destroyed the inscription which had been placed upon the east side of the monument marking the resting place of the child of his sister. In other words, the sister had in the year 1893 placed upon that side of the monument at which the child had been buried the names of its father and mother. It appears that the defendant was present at such burial; that he was one of the bearers thereat. In other words, he knew that a child of his sister had been buried opposite the side of the monument which is in question here. He also knew, according to his own testimony, that the inscription upon such side of the monument was there a year previous to the time when his alleged acts of criminality were committed.

I have gone into the facts so much in detail respecting the rights and ownership of the respective parties in the lot and monument not so much for the purpose of showing lack of equity, proper excuse, or justification on the part of the defendant as to show that under the fair construction and meaning of the provisions of the penal law above quoted the defendant is not an owner within the meaning of such act. The language of the section is that a person "not being the owner thereof," etc. Does it mean that a person having a half-interest, a one-fortieth interest—it makes no difference which—may deface and destroy the monument of his co-tenant if it consists of a monument in a cemetery organized under our laws? I appreciate that under the law of tenancy in common one tenant is the owner of an undivided interest in all the property; but is it possible that such definition of "owner" was intended by the Legislature, when apparently it sought to pass an act which would prevent an irresponsible person from defacing a monument, or a side of a monument, which had been sacredly devoted to the memory of the dead of one branch of the original owner's family?

I assume to assert that nine-tenths of the burial lots and monuments in the various cemeteries of the state are owned, respectively, by innumerable persons who may be designated as tenants in common. I think we should not hold that one of such tenants has the right willfully and maliciously to destroy a monument solely upon the ground that he as tenant in common is part owner, and therefore is entitled to do with his own, so far as the criminal law is concerned, as he pleases. This is an important question. Innumerable people, through inheritance from their ancestors of a burial lot in a cemetery, are concerned. A group of relatives, to commemorate the memory of their ancestors, erect and letter a monument, agreeable to all the parties concerned. It is insisted that one of such group, because a tenant in common of the monument and the ground upon which it is erected, may deface any side of such monument, or destroy the same, because under the provisions of the penal law he as owner of the same is not subject to punishment. In other words, that he is a tenant in common with the other owners of the monument, and therefore may do as he pleases with his own. I think the learned trial judge was right in holding that within the meaning of the statute the defendant was not an "owner" of the monument in question. In other words, that it was not intended by such statute that a part owner, even if he be called tenant in common, should be permitted to desecrate and destroy willfully the interests of

his co-tenants in a monument erected in a cemetery organized under the laws of this state. Under the evidence there is no question but that the jury was justified in finding that the acts of the defendant were willful and malicious. It being concluded that he was not an "owner" within the meaning of the provisions of the penal law, to which attention has been called, the jury were justified in finding him guilty as charged in the indictment.

I conclude that under all the circumstances and within the fair meaning and interpretation of the provisions of the penal law, above quoted, the defendant was not the "owner" of the monument, and that, therefore, he having been found guilty of malice upon proper evidence, he was properly convicted.

I therefore conclude that the judgment and order appealed from should be affirmed.