OPINION of the court
William C. Brennan, J.
Defendant, herein, was indicted for burglary in the third degree; criminal mischief in the second degree; and a violation of section 4218 of the Public Health Law.
The defendant, acting in concert with another individual, is accused of having broken into several mausoleums and desecrating numerous crypts, caskets and their contents (i.e., removing limbs and throwing them on the floor). In addition, he damaged and defaced religious pictures and books of the families of the deceased as well as the mausoleums themselves, which are located on the grounds of Bayside Cemetery, in the County of Queens.
A person is guilty of burglary in the third degree “when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein.” (Penal Law, § 140.20; emphasis supplied.)
Subdivision 2 of section 140.00 of the Penal Law defines “building” as follows: “ ‘Building,’ in addition to its ordinary meaning, includes any structure, vehicle or watercraft used for overnight lodging of persons, or used by persons for carrying on business therein, or used as an elementary or secondary school, or an inclosed motor truck, or an inclosed motor truck trailer. Where a building *581 consists of two or more units separately secured or occupied, each unit shall be deemed both a separate building in itself and a part of the main building.”
The defendant is seeking dismissal of the instant indictment on the grounds that a person cannot be accused of burglarizing a mausoleum.
The issue presented is one that places this court’s own interpretation of the present Penal Law in direct conflict with a long-standing position taken by the Court of Appeals of this State. (See People v Richards, 108 NY 137.)
In Richards (supra, p 142), the Court of Appeals reviewed the definition of burglary from its roots in the common law as an ‘“offense against the habitation of men’ ” and drew a distinction between crimes against the living and crimes against public decency. In determining that a mausoleum did not fall within the definition of a building as then envisioned, the court gave the following rationale: “We simply intend to decide this case and no other; and when we come to examine the indictment, and the proof giving a description of the structure, we come to the belief that it is really nothing more than a grave above ground. The witness speaks of these various compartments as graves. They are intended solely for the interment of dead bodies, and the structure itself can be put to no other possible use without altering its nature and purpose. The small room, as it is termed, in the front portion of the structure between the outside wall and the place for the deposit of the coffins, is used for nothing. No services of a religious nature could be carried on there, and language could not be tortured into calling that place a church, or a place for religious worship. If instead of being placed above ground this structure had been placed in a foundation deep enough to receive it, and then used for the purpose of burying the dead, and that only, could there be any question that it was not the subject of burglary, even although sufficient of the structure were above ground to enable one to reach it through a door and steps? We think not; and we do not think it becomes a building within the statute in regard to burglary any more because it is placed above the ground when its sole purpose is that it shall be used as *582 furnishing graves for the burial of the dead.” (People v Richards, supra, p 147.)
Almost a century has passed since that decision was rendered and it is clear that the Penal Law definition of “building” has been expanded over the years to include things such as “motor truck trailers” in order to keep current with changing life-styles and modern technology.
As noted in the Practice Commentaries to section 140.00 of the Penal Law “[t]he word ‘building’ in its legal sense is ambiguous and is susceptible of being construed, without violence, as including a limitless variety of structures [citations omitted]. A building in its ordinary and popular signification — the sense intended by subdivision two — is a structure which may be entered and utilized by persons for business, public use, lodging, or the storage of goods.” (Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 140.00, p 11; emphasis supplied.)
Other examples of this “limitless variety of structures” may be gleaned from the Building Code of the City of New York which defines “building” as “[a]n enclosed structure including service equipment therein. The term shall be construed as if followed by the phrase ‘structure, premises, or part thereof’ unless otherwise indicated by the text.” (Administrative Code of City of New York, ch 26, tit C, part II, art 2, subart 201.0.) “Structure” is defined as “[a]n assembly of materials forming a construction for occupancy or use, including among others: buildings, stadia, tents, reviewing stands, platforms, stagings, observation towers, radio towers, tanks, trestles, open sheds, coal pockets, shelters, fences, and display signs”. (Administrative Code, ch 26, tit C, part II, art 2, subart 201.0.)
Although not directly applicable to the Penal Law, such examples highlight the necessity of change in our laws to meet society’s needs.
Perhaps it would be useful to adopt a broader definition similar to that incorporated in the New York City Zoning Resolution which provides that:
“A ‘building’ is any structure which:
“(a) Is permanently affixed to the land, and
*583 “(b) Has one or more floors and a roof, and
“(c) Is bounded by either open area or the lot lines of a zoning lot.” (NY City Zoning Resolution, § 12-10.)
“Building or other structure” is defined as including “any building or any other structure of any kind.” (NY City Zoning Resolution, § 12-10.)
Today, as a result of space limitations, it has become commonplace for cemeteries to erect mausoleums several stories high containing several hundred crypts. These modern facilities with inside rooms large enough to permit groups of people to visit and assemble at any one time are enclosed permanent structures that serve a useful function for the living family members of the deceased buried therein. To argue that an above-ground structure, with doors, windows, and roof, cannot be the object of a burglary because it “stores” the remains of the deceased whereas, for example, a shed used for the storage of garden tools is subject to such recognition under the law is illogical and perhaps even immoral. The sacred preservation of human remains is a fact of life, and it is the living who must see that the integrity of burial sites, be they above or below ground, remain undisturbed.
This court takes direct issue with the previously drawn distinction between crimes against the property of the living and crimes against public decency such as the desecration of structures housing the dead. Who suffers by the destruction of a mausoleum and its sacred contents? The answer must obviously be the living.
While this court recognizes the limitations of the present definitions that the Legislature enacted for title I of the Penal Law (offenses involving damage to and intrusion upon property), it cannot, in good conscience, accept the rationale of the Richards court, which would warrant dismissal of the instant indictment.
Vandalism in our cemeteries has become an all too frequent occurrence in recent years. The revulsion that this court feels when confronted with a matter such as this can only enhance its belief that the Legislature must take further action to condemn such behavior. To argue, as did the court in Richards (supra), that there are other offenses in our Penal Law for which this defendant may be charged, *584 smacks in the face of reality. Did not the defendant enter a structure with intent to commit a crime therein? Did not the defendant cause damage to said structure? Should the defendant be charged merely for a trespass on the property, which at most would subject him to a B misdemeanor and a slap on the wrist?
Public policy demands more! As set forth in section 1.05 of the Penal Law:
“The general purposes of the provisions of this chapter are:
“1. To proscribe conduct which unjustifiably and inexcusably causes or threatens substantial harm to individual or public interests * * *
“5. To provide for an appropriate public response to particular offenses, including consideration of the consequences of the offense for the victim, including the victim’s family, and the community”.
Moreover, as stated in section 5.00 of the Penal Law: “The general rule that a penal statute is to be strictly construed does not apply to this chapter, but the provisions herein must be construed according to the fair import of their terms to promote justice and effect the objects of the law.”
The present crime of burglary has undergone major surgery from the body of laws from which it was created.
Thirty-two years ago the following was said regarding statutory burglary: “Of all common law crimes, burglary today perhaps least resembles the prototype from which it sprang. In ancient times it was a crime of the most precise definition, under which only certain restricted acts were criminal; today it has become one of the most generalized forms of crime, developed by judicial accretion and legislative revision.” (Wright, Statutory Burglary — The Magic of Four Walls and a Roof, 100 U of Pa L Rev 411.)
That statement is no less applicable today.
In light of the need for greater protection of society’s burial sites, it would behoove the Legislature to amend the current Penal Law definition of “building” to include mausoleums and similar structures.
*585 To dismiss this indictment on the theory that the structure invaded herein stored the dead rather than a commodity to be used or traded and thus did not constitute a “building” as now prescribed would be a miscarriage of justice.
Accordingly, defendant’s motion to dismiss is denied.