OPINION OF THE COURT
Bertram Katz, J.
This defendant is one of the thousands of homeless individuals who were sheltered at public facilities this past fall and winter. It is alleged that he committed the offense of criminal trespass in the third degree (Penal Law, § 140.10) at the Men’s Shelter contained within the Armory building at 29 West Kingsbridge Road in The Bronx.
In his motion papers, the District Attorney affirms, as stated in the complaint, that the defendant, on November 19, 1983, broke into a locked storage room at the Armory. The storage room contained military fatigues and footwear.
The defendant has moved to dismiss on the grounds that the factual allegations contained in the accusatory instrument are legally insufficient to support the charge of criminal trespass. (CPL 100.40, subd 4, par [b]; 170.35, subd 1, par [a].)
The penal provision in question, section 140.10 of the Penal Law, reads in pertinent part as follows: “A person is guilty of criminal trespass in the third degree (a) when he knowingly enters or remains unlawfully in a building”.
*254 For the defendant, the entire issue of legal insufficiency turns on this court’s interpretation of People v O’Keefe (80 AD2d 923). In that case, the accused trespasser was a guest in the basement apartment of a private home, which was occupied by the complainant’s son. O’Keefe broke into a locked meter closet in the basement, which held the complainant’s jewelry-filled cabinet. The court ruled, quite simply, that a closet is not a “building” within the meaning of the criminal trespass law.
In People v Pringle (96 AD2d 873), the same court clarified its decision in O’Keefe, and held that a “separately secured” nurse’s station in a prison building was a separate “building” for the purposes of subdivision 2 of section 140.00 of the Penal Law. The factor deemed decisive was that the nurse’s station was an independent unit with its own secure entrance. In this sense, it was a separate structure with an independent existence apart from the main prison building.* See, also, People v Niepoth (55 AD2d 970), holding that an upstairs apartment at an inn was separately secured or occupied, and therefore could be the object of a burglary by a defendant who had entered from the downstairs area open to the public.
In the defendant’s view, the O’Keefe case is dispositive of the matter, since the storage room of the Armory is not a separate building with an independent existence of its own. It has, as far as can be determined from the court papers, no separate entrance.
However, as the People have pointed out, the defendant’s analysis totally neglects another element of the offense of criminal trespass, the concept of “knowingly entering or remaining unlawfully.” This element is defined in subdivision 5 of section 140.00 of the Penal Law as follows: “A *255 person ‘enters or remains unlawfully’ in or upon premises when he is not licensed or privileged to do so * * * A license or privilege to enter or remain in a building which is only partly open to the public is not a license or privilege to enter or remain in the part of the building which is not open to the public.”
The illustration of this section provided by the commentary, which was derived from the Commission Staff Notes, is instructive: “This provision assures that one who, for example, enters a department store during regular business hours is not exempted from criminal trespass or burglary sanctions when he knowingly enters a stock room, private office, or other part of the building which is closed to the general public.” (Hechtman, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 140.00, p 17.)
Under the factual allegations presented to the court at this pretrial stage, on November 19,1983, needy members of the general populace were invited, en masse, into specified areas of the Armory. The defendant was among them. This invitation plainly did not encompass the right to force open a locked entrance to a nonpublic portion of the building. (Cf. People v Segal, 78 Misc 2d 944.)
Therefore, if this type of intrusion was established beyond a reasonable doubt at trial, the defendant could validly be found to have entered or remained unlawfully in the Armory building, and to have committed criminal trespass.
The factor distinguishing this case from the holding in O’Keefe is that the Armory is a building open to the public, not a private home. There is no logical reason why this distinction should be significant, except that the Penal Law, by omission, makes this distinction. The alleged conduct in both cases is equally culpable. The court notes in passing that other jurists have voiced their dissatisfaction with elements of this article 140, which is capable of producing anomalous results. (See, e.g., People v Sevigny, 121 Misc 2d 580; Matter of Morgan J.Y., NYLJ, Nov. 9, 1982, p 19, col 6.)
In the instant case, however, the court finds that the alleged conduct is within the plain language of the statu *256 tory proscription, and that the factual allegations in the accusatory instrument provide reasonable cause to believe that the defendant committed the offense charged. The motion to dismiss on grounds of legal insufficiency is hereby denied.

 An oddity of the decision in O’Keefe was the court’s failure to discuss the effect of the final sentence of subdivision 2 of section 140.00 of the Penal Law, which holds that, “Where a building consists of two or more units separately secured or occupied, each unit shall be deemed both a separate building in itself and a part of the main building.” Could not the locked closet, or any locked and enclosed area, be deemed a separate building in itself?
Although this provision was originally aimed at the protection of apartment units (People v Ivory, 99 AD2d 154), other case law suggests that its scope is far wider. Of particular significance is the recent People v King (61 NY2d 550) in which the Court of Appeals cited O’Keefe, but in its holding cast doubt on its vitality. (A separately enclosed store vestibule, shut off from public access by a security gate, was a building for the purposes of attempted burglary, without discussion of “independent existence” or “separate secure entrances”.)