OPINION OF THE COURT
Martin Marcus, J.
In this case, the People allege that the defendant unlawfully entered two railway boxcars and stole property from them. *1046 Based on this conduct, the defendant has been charged with, among other crimes, two counts of burglary in the third degree (Penal Law § 140.20). In order for this conduct to constitute the crime of burglary, each of the boxcars in question must be a "building” within the meaning of Penal Law § 140.00 (2). Because it is clear that the Legislature specifically intended otherwise, the burglary charges against the defendant may not stand.
In his omnibus motions, the defendant seeks, inter alia, inspection of the Grand Jury minutes and dismissal of the charges against him. The defendant’s motion to inspect the Grand Jury minutes is granted to the extent that the court has inspected and reviewed those minutes. They indicate that on September 23, 1993, at about 1:30 p.m., while in the Conrail freight yard at 1080 Leggett Ave., Bronx, New York, Sergeant Roger Strong of the Conrail Railroad Police saw the defendant cut across the tracks, break into two boxcars, and remove from one a case of beer and from the other a 50-pound bag of carrots. After watching the defendant take the property out of the yard, Sergeant Strong arrested him and recovered both the beer and the carrots. This testimony is sufficient to sustain the other charges against the defendant in the indictment, two counts each of petit larceny (Penal Law § 155.25) and criminal possession of stolen property in the fifth degree (Penal Law § 165.40). It is not, however, sufficient to sustain the burglary charges.
Section 140.20 of the Penal Law provides that, "[a] person is guilty of burglary in the third degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein.” Subdivision (2) of Penal Law § 140.00 defines "building” as including, "in addition to its ordinary meaning * * * any structure, vehicle or watercraft used for overnight lodging of persons, or used by persons for carrying on business therein, or used as an elementary or secondary school, or an inclosed motor truck, or an inclosed motor truck trailer.” A boxcar is obviously not a "building” within the "ordinary meaning,” of that term, which, as the Practice Commentary to article 140 of the Penal Law observes, has been defined as " '[A] constructed edifice designed to stand more or less permanently, covering a space of land, usu[ally] covered by a roof and more or less completely enclosed by walls, and serving as a dwelling, storehouse, factory, shelter for animals, or other useful structure’ ”. (Donnino, *1047 Practice Commentary, McKinney’s Cons Laws of NY, Book 39 [1988], at 6, quoting Webster’s Third New International Dictionary of English Language [unabridged].) The question remains whether boxcars fall within any of the addenda to the "ordinary meaning” contained within the statutory definition of a building.
At common law the crime of burglary was almost exclusively " 'an offense against the habitation of men.’ ”[1] (People v Richards, 108 NY 137, 142 [1888], quoting Rodgers v People, 86 NY 360, 363 [1881], supra.) Thereafter, in a series of enactments, the Legislature extended the crime to reach the unlawful entry into a variety of commercial premises, structures and vehicles as well. For example, when the crime was first codified and classified into different degrees, burglary in the third degree prohibited breaking and entering into not only "[a]ny building within the curtilage of a dwelling-house,” but also "[a]ny shop, store, booth, tent, ware-house or other building in which any goods, merchandise or valuable thing shall be kept for use, sale or deposit.” (Rev Stat of NY, part IV, ch I, tit III, § 17 [1st ed], quoted in People v Richards, 108 NY 137, 142-143 [1888], supra.)
Subsequently, the Legislature made explicit its intent to include within the crime of burglary the unlawful entry into structures like the boxcars at issue in this case. In 1863, for example, the Revised Statute quoted above was amended to add, after the phrase "or other building”, the words "or any railroad car, shop, vessel or canal boat”. (L 1863, ch 244, § 1; see, People v Richards, 108 NY 137, 143 [1888], supra.) Similarly, when the Penal Code was thereafter adopted, burglary in the third degree, as defined by section 498, prohibited the breaking and entry into a "building” with a proscribed intent, and section 504 included within the definition of that term, "a railway car, vessel, booth, tent, shop, or other erection or inclosure”. (Supra, 108 NY, at 143.) Somewhat more recently, section 400 of the former Penal Law, which was in effect until 1965, again redefined the term "building” for purposes of the crime of burglary. In this version, as previously, the Legislature included within the definition of "building” things not encompassed within its ordinary meaning, again specifically including "[r]ailway cars”, and for the first time adding "in *1048 closed motor truck” and "inclosed motor truck trailer” as well.[2]
When the Legislature revised the Penal Law in 1965, however, it adopted yet another definition of "building” applicable to its burglary provisions, stating in the pertinent part of section 140.00 (2), that, " '[b]uilding,’ in addition to its ordinary meaning, includes any structure, vehicle or watercraft used for overnight lodging of persons, or used by persons for carrying on business therein.” The Executive Director and the Counsel of the Commission responsible for the revision, who jointly authored the Practice Commentary to the revised article 140, there noted the omission of any reference to railway cars and inclosed motor trucks and truck trailers, and concluded that while, "[t]heft from such vehicles [is] properly punished by the larceny sanctions”, it no longer constituted burglary. (Denzer and McQuillan, Practice Commentary, McKinney’s Cons Laws of NY, Book 39 [1967], Penal Law § 140.00, at 338-339.)
In 1969, the Legislature reconsidered this change, and returned some, but not all, of the omitted language, by adding back to the definition of building "an inclosed motor truck, or an inclosed motor truck trailer”. (L 1969, ch 1151.) In his memorandum recommending that the Governor sign the bill making this change, Attorney-General Louis J. Lefkowitz confirmed its obvious purpose, by making explicit reference both to the fact that the revised Penal Law definition had omitted inclosed motor trucks and truck trailers, and to the conclusion the Practice Commentary had drawn from the omission.[3] While this amendment thus restored to the reach of the burglary statutes the unlawful entry into such vehicles, it still omitted the words "railway car” from the definition of *1049 "building,” and left entry into a "railway car” unpunishable as a burglary.[4]
Even though the explicit reference to railway cars has been removed from the definition, the People argue that each of the boxcars in this case is nonetheless a "building” within the meaning of section 140.00 (2), because each is a "structure [or] vehicle * * * used for overnight lodging of persons, or used by persons for carrying on business therein.” Although a boxcar is not a vehicle,[5] it is certainly a structure.[6] However, a boxcar is not customarily used for overnight lodging, and, while such a use is obviously possible, there is no claim in this case that the boxcars in question were so used. (Cf., Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39 [1988], Penal Law § 140, at 7 ["A dwelling would include, for example, a railroad car withdrawn from service and used for the purpose of habitation”].)
Similarly, although the boxcars were apparently used for the storage and (at least inferentially) the transportation of beer and carrots, there is no evidence that any persons "car- *1050 r[ied] on business therein.” In People v Mincione (66 NY2d 995, 996-997 [1985]), the Court of Appeals held that a van used by a greenhouse construction company "primarily to transport workers, materials and tools” was a building because it could be considered "either an 'inclosed motor truck’ or a vehicle used for 'carrying on business therein’.” Although the Court did not explain how or what business could be carried on within the van, it did observe that its interpretation of the definition of "building” was "consonant both with the legislative intent of the statute and with the historical scope of its judicial construction.” (Supra, at 997; see also, People v Silva, 122 AD2d 750 [1986] [van used to transport cargo to and from city’s airports is "building”]; People v Ruiz, 120 AD2d 437 [van parked at site of subway work project and owned by worker at site could be "building”].)
In People v McCollum (183 AD2d 413 [1st Dept 1992]), the Appellate Division considered the application of Mincione (supra) to a defendant charged with burglary in connection with the theft of two city buses. The Court held that, although the van in Mincione was a "building,” a city bus was not, since, "[tjhere [is] a clear difference between using a vehicle for the purpose of 'carrying on business therein’, and using a vehicle for, as it were, the 'business of carrying people therein’ ” (183 AD2d 413, 414). Here, as in McCollum, although the boxcars may have been used for the business of carrying food and drink "therein”, they were not, within the meaning of Penal Law § 140.00 (2), used "by persons for carrying on business therein.”
Unlike vans at a construction site, the boxcars in this case were not places where workers either rested or worked, locations where their tools were either kept or used, not facilities by which they or their tools were taken to or from the work sites. Even more so than the buses in McCollum (supra), the boxcars were merely instrumentalities of work, and not places in which business was carried on. (See, People v Cobb, 198 AD2d 128 [1st Dept 1993] ["While the cooler may have been used for business purposes, there is no evidence that business was carried on 'therein’ ”].)
More decisively, this case is distinguishable from Mincione (supra) in another respect. In Mincione, the Court of Appeals could find that a van was a "building” by interpreting the statutory language "consonant * * * with the legislative intent” (66 NY2d, at 997). Here, though, such an interpretation is clearly impossible. In the evolving statutory definition of *1051 "building,” "railway cars” were, at first, specifically included, and then, specifically excluded, and finally, and after apparent reconsideration, still excluded. Given that history, in its present incarnation the term "building” simply may not be stretched to encompass the boxcars in question. (See, People v Gaines, 74 NY2d 358 [1989] [rejecting an interpretation of burglary in the third degree which the burglary statute, "[o]n its face * * * could be read to support” because it was inconsistent with legislative intent].)[7]
For these reasons, unlawfully entering into the boxcars did not constitute the crime of burglary in the third degree, and the first and second counts of the indictment, each charging the defendant with that crime, are hereby dismissed.

. The common law did, however, recognize two exceptions: breaking into a church and breaking through the walls or gates of a town. (People v Richards, 108 NY 137, 142 [1888].)

. See, Denzer and McQuillan, Practice Commentary, McKinney’s Cons Laws of NY, Book 39 [1967], Penal Law § 140.00, at 337-338.

. In pertinent part, the Attorney-General’s letter stated that "the term 'building’ was defined in Article 38-burglary of the old Penal Law (§ 400) to include an 'inclosed motor truck’ and an 'inclosed motor truck trailer’. Under present law a person who, with intent to commit a theft, is apprehended in a truck before the commission of the theft could only be charged with attempted larceny. The practice commentary in the Revised Penal Law states that motor trucks and motor truck trailers were excluded from the definition of 'building’ because in the view of the revisors 'Theft from such vehicles are properly punished by the larceny sanctions.’ ” (Mem to Governor in support of 1969 Assembly Bill A 6597.)

. The New York Railroad Association, in urging the Governor to sign the amendment into law, argued that "[t]he increased penalties provided in this bill should prove to be a strong deterrent to such crimes as pilferage from trucks and hi-jacking.” Ironically, the Association made no mention of the continued omission of railroad cars from the definition of "building”. (Letter of Condello in support of L 1969, ch 1151.)

. As already noted, when railway cars and inclosed motor trucks and truck trailers were omitted from the definition of "Building” in Penal Law § 140.00 (2), the Practice Commentary observed that, "[t]heft from such vehicles” could only be punished as larceny. (Denzer and McQuillan, McKinney’s Cons Laws of NY, Book 39 [1967], Penal Law § 140.00, at 337-338 [emphasis supplied].) However, Penal Law § 10.00 (14) states that, " '[v]ehicle’ means a 'motor vehicle’, 'trailer’ or 'semi-trailer,’ as defined in the vehicle and traffic law, any snowmobile as defined in the parks and recreation law, any aircraft, or any vessel equipped for propulsion by mechanical means or by sail.” According to Vehicle and Traffic Law § 159, the term "vehicle” includes "[e]very device in, upon, or by which any person or property may be transported or drawn upon a highway, except devices moved by human power or used exclusively upon stationary rails or tracks.” Similarly, Vehicle and Traffic Law § 125 defines "motor vehicles” to exclude, inter alia, "vehicles which run only upon rails or tracks.” Thus, for purposes of article 140, railway cars are not vehicles.

. See, People v Sevigny, 121 Misc 2d 580, 582 (Sup Ct, Queens County 1983) (noting that the Administrative Code of City of NY [ch 26, tit C, part II, art 2, subart 201.0] defines a "structure” as "[a]n assembly of materials forming a construction for occupancy or use, including among others: buildings, stadia, tents, reviewing stands, platforms, stagings, observation towers, radio towers, tanks, trestles, open sheds, coal pockets, shelters, fences, and display signs”).

. In Gaines (supra), the People argued that a person who committed a crime while unlawfully in a premises was thereby also guilty of the crime of burglary in the third degree, even if he entered the premises without the intent to commit a crime therein. The Court of Appeals acknowledged that there was support for the People’s position in the language by which the crime of burglary in the third degree was defined. Nonetheless, the Court rejected their interpretation finding that the Legislature, which "has continued to penalize burglary as a serious felony * * * because of the heightened danger posed when an unlawful intrusion into a building is effected by someone bent on a criminal end,” had no intent to include such conduct within the statute’s reach. (74 NY2d, at 362.)