## TEXAS *v.* CHILES.

1. The purpose of the act of Congress (Revised Statutes, § 858) enacting that "in courts of the United States no witness shall be excluded . . . in any civil action, because he is a party to or interested in the issue to be tried, *Provided*," &c., was to put the parties to a suit (except those named in a proviso to the enactment) on a footing of equality with other witnesses; that is to say, to make all admissible to testify for themselves, and all compellable to testify for others.
2. An order accordingly made for a *subpœna* to a defendant in equity, in order that his deposition might be taken for the complainant.

THIS was an application for an order that a *subpœna* issue for John Chiles, the defendant in the case of *Texas* v. *Chiles*

---

(a case in equity), in order that his deposition might be taken on behalf of the complainant. The proper disposition of the motion depended upon the solution of the question whether he could be required to testify by the other party. The statutory provision of Congress upon the subject, found in section 858 of the Revised Statutes, was as follows:

"In the courts of the United States no witness shall be excluded in any action on account of color, or in any civil action because he is a party to, or interested in, the issue tried: *Provided,* That in actions by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with, or statement by, the testator, intestate, or ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court. In all other respects the laws of the State in which the court is held shall be the rules of decision as to the competency of witnesses in the courts of the United States in trials at common law, and in equity and admiralty."

*Messrs. T. J. Durant and R. T. Merrick, in support of the application; Mr. Albert Pike, contra.*

Mr. Justice SWAYNE delivered the opinion of the court.

It was a rule in equity of long standing that the complainant could examine the defendant as a witness, upon interrogatories, and that one defendant might examine another, but they could not examine the complainant without his consent, and the right to examine a defendant was attended with serious restrictions and embarrassment.[*] A bill of discovery was a dilatory and expensive measure.[†] It was also less effectual than the examination of the defendant as a witness.

In trials at law the system of exclusion was more rigid. The general rule of the common law was that no party to

[*] 1 Smith's Chancery Practice, 343; 1 Greenleaf on Evidence, § 361; Eckford *v.* De Kay, 6 Paige, 565; Ashton *v.* Parker, 14 Simons, 632; 2 Daniell's Chancery Practice, Perkins's edition, 1865, p. 885, note.

[†] 2 Story's Equity, §§ 1483, 1489.

the record could be a witness for or against himself, or for or against any other party to the suit.* This doctrine was attacked by Bentham in his work on evidence, published in 1828, with great force of reasoning. He maintained that "in the character of *competency* no objections ought to be allowed."† His views produced a deep impression in England, and became the subject of earnest discussion there. Subsequently they bore fruit. In "the County Courts Act," passed by Parliament in 1846, it was declared that "on the hearing or trial of any action, or on any other proceeding under this act, the parties thereto, their wives, and all other persons may be examined either on behalf of the plaintiff or defendant upon oath or solemn affirmation." This was a great alteration in the law from what it was before. After it had been tested for six years in the county courts and its wisdom approved, the rule was, in 1851, by a measure known as "Lord Brougham's Act," with a few exceptions not necessary to be stated, made applicable in all legal proceedings elsewhere. An able writer says, "Every eminent lawyer in Westminster Hall will readily admit that it has been productive of highly beneficial results." He adds: "In courts of law it has not only enabled very many honest persons to establish just claims which, under the old system of exclusion, could never have been brought to trial with any hope of success, but it has deterred at least an equal number of dishonest men from attempting on the one hand to enforce a dishonest demand, and on the other to set up a fictitious defence." The common-law commissioners, in their report upon the subject, said:

"According to the concurrent testimony of the bench, the profession, and the public, the new law is found to work admirably, and to contribute in an eminent degree to the administration of justice."‡

The innovation, it is believed, has been adopted in some form in most, if not in all the States and Territories of our

* 1 Greenleaf on Evidence, §§ 329, 330.        † Vol. 1, p. 3.
‡ 2 Taylor on Evidence, § 1218.

Union.* It is eminently remedial, and the language in which it is couched should be construed accordingly.

A doubt has been suggested whether the enactment before us does not give merely a privilege to each party which may be availed of or not as a matter of choice, without conferring the right upon either to compel the other to testify.

This view is too narrow and cannot be maintained. The first sentence forbids, in the courts of the United States, exclusion in any case on account of color, and in civil actions on account of interest or being a party. If either party offers to testify and is excluded by reason of being a party, there is certainly a clear infraction of the statute, both as to its language and meaning. If either party calls the other, and the party called is excluded upon this ground, is not the infraction equally clear? The language applies as well to one case as to the other. Both are alike within its terms and meaning. We see no ground for a distinction. A doubt, the converse of the one suggested, might with equal propriety be insisted upon. Such a proposition would have the same foundation, and might be sustained by an argument, *mutatis mutandis*, in the same terms. The same doubt and the same reasoning would apply as to colored witnesses. All such doubts rest upon an assumption unwarranted by anything in the statute. The case is one where the language is so clear and comprehensive that there is no room for construction, and the duty of the court is simply to give it effect according to the plain import of the words. There should be no construction where there is nothing to construe.†

But if there were doubt on the subject, the statute being remedial in its character, the doubt should be resolved in a liberal spirit in order to obviate as far as possible the existing evils. To permit parties to testify, and to limit the statute to this, would deprive it of half its efficacy, and that much the most beneficial part. Where the testimony of one party is important to the other there is, of course, un-

---

* 1 Greenleaf on Evidence, § 329.

† United States *v.* Wiltberger, 5 Wheaton, 76.

willingness to give it. The narrow construction suggested would leave to the party needing the evidence in such cases no choice but to forego it, or fall back upon a bill of discovery. It is hardly credible that Congress, in departing from the long-established restriction as to parties to the record, intended to stop short of giving the full measure of relief. We can see no reason for such a limitation. The purpose of the act in making the parties competent was, except as to those named in the proviso, to put them upon a footing of equality with other witnesses, all to be admissible to testify for themselves and compellable to testify for the others. This conclusion is supported by all the considerations applicable to the subject.

ORDER MADE.