Mr. Justice Hagner
delivered the opinion of the court.
The bill in this case was filed by William E. Clark against Henry Krause and wife and Michael Joachim. It alleges that the defendant Krause, in April, 1881, was indebted to complainant in the sum of about eighteen hundred dollars; that he was then possessed of an acre of land on the Seventh street road in this District, which, on the 18th of that month he conveyed, for the alleged consideration of $8,500, to his brother-in-law, Joachim ; that Joachim did not enter upon the property, but it remained in the possession of Krause, as it had been before the deed; that Joachim was a printer by trade, possessed of small means, and that no consideration actually was or could have been paid by him for the property; that afterwards a judgment was obtained by the complainant against Henry Krause, upon which a writ of fieri facias was issued, which was returned nulla bona. The bill prays that the defendants answer, but not under oath; that a decree be passed to set aside this conveyance as voluntary and fraudulent, and a trustee be appointed to make sale of the property for the payment of the debts of complainant and the other creditors of Krause.
The defendants answer without oath, as suggested ; the wife disavowing? all knowledge of the matters alleged, and Joachim and Krause substantially giving the same statement of the transaction. They admit their relationship; that after the execution of the deed Krause remained in possession of the property, but they say that his possession was as tenant of Joachim; and they deny positively that the deed was fraudulent in any respect, and insist that the transaction was an honest one throughout ; they aver that some time before the deed Joachim had lent Krause, his brother-in-law, various sums amounting to about $2,500, and that this loan formed part of the consideration of the sale ; that the difference between that sum and the $8,500 mentioned in the deed was paid in cash, and the deed was thereupon executed, acknowledged and recorded according to law. With respect to the charge that Joachim was a man of small means aud unable to make such a purchase, they *565 say that he was in fact possessed of considerable property, and that at the time he bought the farm he owned three houses worth at least $4,000.
Upon these denials by the- defendants, the complainants went to proof.
Before proceeding to its examination, it may be well -to refer to some of the general principles which control the courts in considering whether sufficient proof has been offered to invalidate a deed assailed for fraud. These are well expressed in the excellent work of Mr. Bump •on Fraudulent. Conveyances, which was so often referred to by the counsel for the complainant in the argument. The author reminds us, on page 575, that the recitals in a deed are prima facie correct; that the burden of proof rests upon, the creditor assailing the deed (p. 581); and again, ■on page 584, “ If the creditor does no more than. create an equilibrium, he fails to make out his case. Mere suspicion leading to no certain results, is uot sufficient. A legal title will not be divested upon mere conjecture, or evidence loose or indeterminate in its character.” “The proof must be ■clear and satisfactory ; so strong and cogent as to satisfy a man of sound judgment of the truth of the allegation.” P. 585. ' ■
“ In the proof of a fraudulent intent, the same general rule prevails in equity as at law. The law does not presume fraud, but it must be established by evidence * * * The •difficulty of demonstrating the intention from the overt acts and conduct of the parties, furnishes no reason for the .assertion of the power by a judge, guided by no more certain rule than his own arbitrary conclusions, to presume a fraudulent intent from his own vague suspicions of the nature and character of the transactions, unassisted and uncontrolled by any certain and fixed principles.” Sherman vs. Hogland, 78 Indiana, 472.
In Jaeger vs. Kelley, 52 N. Y., 274, the court says : “ To in-validate a sale, tangible facts must be proved from which a legitimate inference of a fraudulent intent can be drawn. It is not enough to create a supicion of wrong, nor should a jury be permitted to guess at the truth.”
*566 Tested by these rules, has the complainant proved táscase so as to entitle him to relief at our hands ? No witnesses were called by the defendant, five for the complainant. Three of these were the defendants themselves, and the other two were the complainant and his clerk.
Laying aside for the present the testimony given by the defendants, we will consider the sufficiency of the proof of' the different matters relied upon as badges of fraud, in the-light of the other testimony, and of the admissions in the answers.
The first prominent undisputed fact is the near family connection between the grantor and the grantee, as brothers-in-law. That fact certainly might, under certain circumstances, be justly considered as a makeweight of importance., when taken in conjunction with other established suspicious facts. But the mere existence of relationship constitutes no reason why persons occupying that position should be-debarred from business dealings with each other ; and standing alone it amounts to nothing as evidence of fraudulent intent.
Next, as to tbe value of the property. It is proved by direct evidence that it was assessed at $3,500, which is the-sum named in the deed, and certainly there is no general complaint that the assessments are too low. It is true-that Mr. Clark (who, as he charges, will lose his claim, utterly unless this deed is set aside), says he would give $5,000 for the property, provided his debt- is to be credited to him as part of that sum, which w-ould reduce the amount to be paid by him to about $2,000. But the well-established rule as to setting aside sales upon the ground of inadequacy of price may -well be applied here,, that before a sale will be set aside for inadequacy alone, it must appear that the price was so grossly inadequate as to shock the moral sense and create, at once upon its being mentioned, a suspicion of fraud. Clearly such is not the case here.
Again, much reliance is placed upon the fact that the- *567 party grantor was greatly involved, and had been sued, at the time the conveyance was made ; but there is no admitted feature of illegality in this, since it is abundantly settled that a debtor in failing circumstances may prefer one creditor ,to the others, if the claim of the preferred creditor is bona fide, and honestly due. Morrison vs. Shuster, 1 Mackey, 290.
Another fact much insisted upon as strongly evincive of fraud, is, that the grantor continued in undisturbed possession after the execution of the deed. Where possession of personalty is retained by the vendor, after an alleged sale, that circumstance is justly held to be one of importance upon the question of bona fides, since possession of personal property is generally regarded as a badge of ownership. But such is not the case with respect to the possession of real estate. Mr. Bump (p. 177) states the difference in principle between the'cases in these words: “Possession of real estate is not without weight, and in a doubtful case may strengthen any just suspicions arising from other causes. But it does not per se raise a presumption of fraud as it does in the case of personal estate, where possession is prima facie evidence of ownership. The same rule does not apply to real estate. Possession is not there deemed evidence of ownership. The laws of most nations require solemn instruments to pass the title to real property. The public look not so much to possession as to the public records, as proofs of the title to such property. . The possession must, therefore, be inconsistent with the sale and repugnant to it in terms or operation, before it raises a just presumption of fraud.”
Next, as to the delay in recording the deed. There -was an interval of three weeks between the date and the recording, but this was not sufficiently prolonged to justify the conclusion of fraudulent concealment that the complainant seeks to draw from it. If precipitancy had been • shown in the recording, that fact might more properly have been insisted on as a circumstance of suspicion; but the delay was not so unusual or suspicious as to amount to any evidence of fraudulent purpose, especially as there is nothing to show that any new debts were incurred during that time.
*568 There remains the further circumstance testified to by the complainant Clark, that Krause told him after the deed had been executed that he owed nobody but him (Clark). Assuming that Clark properly understood what was said by this foreigner, in the market, in broken English, that statement would, in conjunction with other circumstances of suspicion, be entitled to weight; but people easily deceive themselves in such matters where they are interested, and it may be that what Krause really said was that there -was nobody else pressing him. For Clark knew perfectly well Krause was at that time indebted to the Market House Company, and the indebtedness was the subject of the same conversation between Krause and himself, Krause certainly did not mean to deny what he admitted at the same moment.
And if the deed to Joachim was a fair transaction, Krause might well have said he owed nothing to Joachim after its execution since the sale had discharged the debt.
Passing to the testimony of the defendants, the question arises, whether that proof, considered with the testimony of the other witnesses, is sufficient to authorize the court to set aside this conveyance. The complainant produced these three defendants as witnesses, to prove that the sale was fraudulent, without consideration, and designed to cheat or defraud creditors. But Henry Krause and Joachim swear distinctly that it was not a fraudulent sale ; that it was not made without consideration, and was not designed to defraud j and thus the complainant is met by this asseveration, out of the mouths of his own witnesses, from which they never depart, from the beginning to the end, of their examination. But the complainant insists that, notwithstanding these witnesses fail to sustain his allegations, but testify to the very reverse, they also make statements very inconsistent with the conclusions they thus -announce; and that -the court is at liberty to weigh these inconsistent statements against each other, and thereby effectively to convert the defendants’ positive asseveration of the dona fides of the transaction, into an avowal that it was fraudulent throughout ; *569 for it would not aid the complainant simply to find that the alleged discrepancies only destroy the value of the defendants’ evidence. We think this position cannot be sustained. These witnesses are produced by the complainant, and are vouched by him to establish his case. Upon the main point — the bona jidesoi the transaction — they express no hesitation or doubt. Suppose these witnesses, instead of being the defendants, had been disinterested persons, who had been produced on the part of the complainant to prove that the sale was without consideration, and that the deed was fraudulent and should be set aside ; and that, when they were examined, they had testified distinctly that the transaction was not fraudulent, but was honest and made in good faith. Could it be claimed that alleged inconsistencies, brought out by the complainant’s examination of his own witnesses, could avail to convert their positive conclusions effectively into proof so opposite in character that it should be taken bj? the court as full evidence of fraud ?
Nor do we think the inconsistencies and omissions pointed out in the testimony are of such sinister import as to weaken the conclusion of the witnesses. It.is said the witnesses should have produced receipts evidencing the payment by Joachim to Krause. The deed from Krause contained an efficient and compendious receipt for the purchase money; and the loss or destruction of the several antecedent receipts would be considered nothing unusual in the experience of business men more familiar with such matters than these parties seem to have been.
There was no obligation upon the complainant to call the defendants as witnesses, aucl after he had voluntarily done so, thereby vouching for their competency and credibility, he was estopped to assail their statements for the lack of either of these qualities ; though he was, of course, at liberty to call other witnesses who might show that the defendants wmre mistaken in their statements. This he did not attempt to do, although the defendant disclosed the names of several persons who they alleged had knowledge of the facts.
It is urged that the peculiar character of the transactions, *570 resting so-greatly in the knowledge of the defendants, imposed upon them a special obligation to disclose its every feature, and that their failure to explain all the circumstances of suspicion should create in the mind of the court a most' unfavorable impression as to the bona fides of the deed. In the cases cited in support of this position it will be observed that the party impeaching the transaction had offei’ed evidence tending to show- mala fides, and thus imposing upon the parties to the alleged fraud, the duty of meeting this proof by counter evidence: and it was in this state of case that the courts criticised unfavorably their failure'to offer testimony in rebuttal. Thus in Clements vs. Moore, 6 Wall., 299, the complainant had adduced proof that the grantee knew when he received the conveyance that the grantor’s object w'as to deprive certain of his creditors of all chance of payment from the property conveyed; and the court properly held that if the parties to the conveyance made no effort to meet this by counter-evidence, when they must have possessed the amplest knowledge of the surroundings of the act, their failure to do so, would operate almost as an admission of the charge. But the court did not in those cases mean to say that this proof was to come from the parties to the deed, and by their own testimony. When the case in 6 Wallace was decided, the parties to the suit were not competent witnesses, on their own offer. And as the law stood then, and as it stands now in the text books upon equity evidence, when the complainant examined a defendant, after he had been admitted as a witness, by order of court, no decree could be passed against him if the examination extended to any matters actually involved in the decree. The rule is thus stated in 3 Green leaf Ev., § 316. “The examination of a defendant by a plaintiff ordinarily operates as an equitable release to him, so far as regards the matters as to which he is interrogated. No decree can, therefore, be had against him, except as to matters wholly distinct from those as to which he was examined. The reason of this rule is that it is inconsistent to allow the plaintiff to call on the defendant to assist him with evi *571 dence in his cause, and at the same time to act'against him with respect to the same matters.” The author states the exceptions to the rule, which arise where the defendant who is examined is only a formal party, as trustee, &c., or where a decree pro confesso, has been obtained against him.
In 2 Danl. Chy. (451), the position is thus explained : “ For the rule of the court is that whenever you examine a defendant or a witness, you cannot pray an adverse decree against him, because that would be charging him on his own evidence, which if you do, would be a great temptation to defendants to forswear themselves.” Gurley’s Eq. Ev., 340.
And this remained the rule in England, until the passage of the 6 & 7 Victoria, Ch. 35
The same reasoning is assigned for the rule in Maryland, Lingan vs. Henderson 1 Bland, 268, and in Alexander’s Practice, 72.
"We have found no ruling as to the effect of 'our evidence acts, admitting parties to testify, upon this principle of equity evidence. In Texas vs. Childs, 21 Wall., 488, the Supreme Court determined that a defendant was not only admissible as a witness in an equity cause, but that he was also compellable to testify upon the demand of the complainants ; but the case does not decide as to the effect of the evidence, or whether the complainant could procure a decree against the defendant in respect of the matters as to which he had seen fit to examine him. In the case before us, no order to examine the defendant had been obtained.
Without intending to decide the question thus suggested, it at least is evident that the analogies as well as the reason of the law are against the ascription to the defendant of any especial obligation in giving his personal testimony on the demand of the complainant, to create a case for his opponent by acquiescing in the imputation of bad faith, while the charge remains unsupported by the testimony of a single adverse witness; or that unfavorable inferences are to be (drawn from his failure to strengthen circumstances of alleged suspicion, supposed to be inconsistent with his positive statements.
*572 Another circumstance much relied on by the complainant is the refusal of the wife of Krause to testify on the demand of the complainant.
No application was made to the Equity Court to compel her to answer, which is the proper course where a witness is recusant. The failure to make such application might well be taken as an abandonment of the demand for her testimony.
But surely a charge of fraud cannot be considered as proved because witnesses who are called to establish the allegation refuse to open their mouths. Besides, it seems to be in the highest degree doubtful whether, laying aside the evidence acts, Mrs. Krause was either competent or compellable to testify as a witness on the demand of the complainant.
Her husband was a co-defendant, and he objected to her examination.
The provision in the act that a party in interest or to the record may be examined, has nothing to do with this question. As expressed in Lucas vs. Brookes, 18 Wall., 453 : “ The objection to a wife testifying on behalf of her husband is not, and never has been, that she has any interest in the issue to which he is a party. It rests solely upon public policy, so that the statute has no application.”
The evidence acts simply relieve the particular disabilities enumerated — that the party called is interested, or is a party; but the disabilities arising from want of age, or mental infirmity, or infamy, &c., or that the witness is called to testify for or against her husband (except in particular cases), remain, notwithstanding the witness may happen to be a party to the suit, or may be interested in the result. This court so decided in General Term, in Burdette vs. Burdette,* where the husband and wife were held incompetent to testify in an application for a divorce a vinculo. See Gresley’s Eq. Ev. 341.
Nor would the husband’s assent have rendered the wife a *573 competent witness. 2 Taylor’s Ev., § 1232. The author states that Lord Hardwicke, in Barker vs. Dixie, Cases Temp. Hardw., 264, refused to admit a wife to testify against her husband, notwithstanding his assent; and proceeds, “ and this opinion has been followed in America, apparently upon the ground that the interest of the husband in preserving the confidence reposed in her, is not the sole foundation of the rule, but that the public have also an interest in the preservation of domestic peace, which might be disturbed by her testimony notwithstanding his consent.”
It is unnecessary to review all the evidence at length here, but upon a careful consideration of the allegations and proof, we have no hesitation in declaring that the allegations of fraud in the bill are not sustained. It would therefore follow that the bill should be dismissed.
The decree below adjudged that the complainant’s judgment was due by the defendant Krause and it was declared to be a lien upon the land, subject only to such sum as was actually due to Joachim, by Krause for loans and advances, and further that the deed to Joachim should be held to stand as a mortgage to secure the amount justly due to him by Krause when the same was executed. It is insisted upon the part of the complainant that this feature of the decree below should be preserved and that the auditor should be empowered to make such ascertainment.
But it is evident that such a provision would effectively be setting the deed aside as fraudulent, by indirection, and this we have decided should not be done, directly.
Again, there is no prayer in the bill for any such relief. The bill plainly impeaches the deed and prays its destruction upon the allegation of actual fraud. It is well settled by authority that where a defendant is brought into court to meet such a charge,' and so effectually repels it that the court would not be justified in holding that the averment is proved, the complainant is not at liberty to change his ground, and obtain other relief, based upon the proof of constructive fraud, or other equities supposed to be established by the evidence. In the language of the circuit court in Fisher vs. Boody, 1 Curtis C. C., 206 :
*574 “ If a bill charges fraud as the ground of relief, fraud must be proved. The proof of other facts, though such as would be sufficient, under some circumstances, to constitute a claim for relief under another head of equity, will not prevent the bill from being dismissed.”
And the Supreme Court in Eyre vs. Potter, 15 How. 42, says :
lC Where a bill charges actual and intentional fraud, and prays for a relief on that ground, the complainant cannot, under the prayer for general relief, rely' on circumstances which may amount to a case for relief, under a distinct head of equity, although those circumstances substantially appear in the bill, but are charged in aid of the actual fraud.”
Such was the ruling of this court in the recent case of Federich vs. Christiani.
.If. the deed here assailed is fraudulent in fact, there could be no justification for a court of equity to sustain any part of it; and if it is held to be not fraudulent, then the grantee’s right to his property cannot be impaired by fastening upon his land a judgment subsequent to the conveyance.
The only cases where an equity court undertakes to decree indemnity, are those where there is no charge of actual fraud, but an averment of some manner of constructive fraud, as where the grantee paid a grossly inadequate price for the property, as in Washington vs. Bullitt, 6 Md., 172, and Drury vs. Cross, 7 Wall., 305: Bump on Fraud. Con., 597.
The decree below is therefore reversed, and the bill dismissed with costs.

Ante, p. 469.