THE PEOPLE, RESPONDENT, *v.* BENÍTEZ ET AL., APPELLANTS.

APPEAL from the District Court of San Juan, Section 2.

No. 422.—Decided March 6, 1913.

CRIMINAL LAW—FORMER JEOPARDY—DEATH OF TRIAL JUDGE.—When a judge sitting in a case dies before rendering a judgment therein the defendants may be tried by his successor in office, and this does not constitute former jeopardy. The principles which govern this plea in trials by jury are applicable to cases tried by a court without a jury.

ID.—COMPLAINT, SUFFICIENCY OF.—Although the complaint is loosely framed, as it charges that the defendants were playing ''with money,'' these words are sufficient to give them notice that money was being exchanged at the game, and hence that they were playing ''for money.''

ID.—STATUTE TAKEN FROM ANOTHER STATE—CONSTRUCTION OF LAW—PRESUMPTION.—When a statute is taken from another State the presumption is that in adopting it the Legislature accepted the construction put upon it by the courts of the State from which it was adopted.

ID.—PROHIBITED GAMES—CONSTRUCTION OF LAW—NOSCITUR A SOCIIS.—The word

"play" employed in the first part of section 299 of the Penal Code as origi-
nally enacted and which is the equivalent of section 330 of the Penal Code
of California, includes all persons who deal the cards, conduct or carry on
the game, and excludes persons who play or bet on the prohibited games in
the sense in which these words are used in the second part of the same
section. These words require the same construction in accordance with the
principle of *noscitur a socis.*

Id.—Prohibited Games—Construction of Law.—It is evident from the juris-
prudence cited that in section 299 of the Penal Code as originally enacted,
the object sought was the suppression of all games mentioned in the statute
where some person conducted, opened or managed the game in which he or
some other person obtained a profit or gain by the mere fact of such opening,
managing or conducting.

Id.—Prohibited Games—Amendment of Statute—Construction of Law.—As
section 299 of our Penal Code was amended in 1908 by adding only the word
"poker" to the list of prohibited games without changing the character of
said statute, the principle of *noscitur a sociis* is likewise applicable to said
amended section.

Id.—Poker—Prohibited Games.—Although poker may be played without a
banker or manager, it may also be played with a banker who obtains a profit
or certain percentage, and in such a case it comes within the games pro-
hibited by the amended section.

Id.—Construction of Law—Noscitur a Sociis.—The rule of construction is that
where words of particular description are followed by general words that are
not so specific and limited, the general words should be construed as appli-
cable to persons or things of like kind as are designated by the particular
words, unless there be a clear manifestation of a contrary purpose from the
general context.

Id.—Prohibited Games—Construction of Law—Noscitur a Sociis.—The addi-
tion of the words "or any game of chance" to section 299 of our Penal Code
by the amendment of March 10, 1910, could have no other object than to
prohibit any other game of a like or similar character to the games enumerated
in said section and under the same conditions of dealing, conducting, opening,
carrying on, or playing, in the sense in which these words are used in the
first part of the section. The principle of *noscitur a sociis* is equally appli-
cable to this amendment.

Id.—Prohibited Games—Construction of Law.—A person can only be guilty of
the crime of playing or betting at a game when some one is conducting,
carrying on, dealing or playing the prohibited game in the sense in which
these words have been interpreted.

Id.—Poker in Private House—"Rake-off."—Playing a game of poker in a
private house is not prohibited by the statute unless there is some one who
obtains a "rake-off" or an advantage by maintaining the game or giving the
opportunity for play.

Id.—Benefit of Doubt.—Any doubt which may arise in the construction of a
criminal statute must be resolved in favor of the accused.

Id.—Criminal Statutes—Construction of Law—Implication.—Criminal stat-
utes must be strictly construed in those parts which are against the defendant,
but liberally construed in those which are in his favor. No person is to be
made subject to such statutes by implication.

The facts are stated in the opinion.

*Mr. Charles E. Foote, fiscal,* for .The People.

*Mr. Eugenio Benítez Castaño* for appellants.

MR. JUSTICE WOLF delivered the opinion of the court.

In this case, which purports to be a prosecution under section 299 of the Penal Code, appellants assign four grounds for reversal of the judgment:

I. Insufficiency of the complaint.

II. Inapplicability of section 299 of the Penal Code to a game played in a private house.

III. Former jeopardy.

IV. Insufficiency of the proof.

We shall first consider the plea of former jeopardy. This plea is not well founded. It is based on the fact that the case being originally tried in the district court before Judge Gill, without a jury, and all the proof submitted to him, that said judge died about the middle of June, 1911, without making any finding or rendering any judgment. While it is true that a *previous jeopardy* may in some cases be raised on a plea where a first jury is discharged and a second is sworn, an exception arises when such first jury, by some act or happening independently of the will of the prosecutor, is prevented from acting as such jury, as when one of the number dies. In such an event there is no possibility of a verdict. The jeopardy is arrested and there must be a new trial. Here it was a judge who was the trier of the fact, but the same principle applies, and the second trial judge committed no error in deciding the issue of jeopardy against the defendants. *Nugent* v. *State,* 24 Am. Dec., 746; *State* v. *McKee,* 21 Am. Dec., 499; *People* v. *Rossy,* 85 Cal., 383.

In arguing the question of the sufficiency of the complaint, two points are made. The first is that the complaint is defective, inasmuch as it charged the defendants with playing poker with chips and money, instead of saying that they were playing for money or for chips representing money or value. The case of *People* v. *Carroll,* 80 Cal., 153, cited by the ap-

pellants, only decides that an information setting up that the game was "conducted for money," is not equivalent to saying that it was "played for money," as required by the statute, inasmuch as the game might be conducted for sport and somebody on the outside paid for conducting it. While the complaint is loosely framed, it is sufficient to give the defendants notice that money was being exchanged at the game, and hence that they were playing for money.

The principal question involved in the case is whether section 299 of the Penal Code, as amended by subsequent laws, was aimed or directed at suppressing all gambling for money or value, or whether it was designed to prevent the kind of gaming from which some one or more persons directly or indirectly derived a gain or pecuniary profit frequently without any monetary risks on their part or with a percentage in their favor.

At common law, gambling or gaming was not an offence unless it tended to become a breach of the peace or became a public nuisance. A common gambling house was indictable as a nuisance, *Lord* v. *State*, 41 Am. Dec., 730. Subsequent statutes were passed almost everywhere against public gaming and public gambling houses, and sometimes against common gamblers.

Section 330 of the Penal Code of California provides:

"*Gaming prohibited. Penalty.*—Every person who deals, plays, or carries on, opens, or causes to be opened, or who conducts, either as owner or employe, whether for hire or not, any game of *faro, monte, roulette, lansquenet, rouge et noir, rondo,* tan, fan-tan, stud-horse, poker, seven-and-a-half, twenty-one, hokey pokey, or any banking or percentage game played with cards, dice, or any device, for money, checks, credit, or other representative of value, and every person who plays or bets at or against any of said prohibited games, is guilty of a misdemeanor, and shall be punishable by a fine not less than one hundred dollars, or by imprisonment in the county jail not exceeding six months, or by both such fine and imprisonment."

Thus it will be seen by comparison that section 299 of the Penal Code as originally passed by our Legislature, was, for all purposes, identical with the California statute. Hence, as our statute was taken from California, it must be presumed that the legislature adopted that section with the construction put upon it by the courts of California. *People of Porto Rico v. Rivera,* 7 P. R. R., 344; *People of Porto Rico v. Colón,* 15 P. R. R., 666; *James v. Appel,* 192 U. S., 429; *The Copper Queen Mining Co. v. Arizona,* 206 U. S., 475; *Kealoha v. Castle,* 210 U. S., 154.

The word "play" in the first part of that statute has been uniformly considered by the courts of California to be used in the same general sense as "deal," "conduct," or "carry on." The person or persons who deal, conduct, carry on, etc., manage and control the game, fix the rules and conventions thereof, and derive advantage therefrom. To "play" a prohibited game is used in this part of the Statute in such a sense. In *People v. Beatty,* 14 Cal., 572, the information contained the words "did deal and play a game of faro." The word "play" as there used, is equivalent to "open for play" or "spread for play"; because one might still be he'd to be playing the game, although he merely set up, owned or controlled the gaming instrument. In *People v. Gosset,* 93 Cal., 641, an indictment charging that the defendant "did deal, p¹ay, conduct and carry on a game of faro," was held to constitute but one offense thereby showing that "play" was used in the same general sense as "conduct" or "carry on." In *People v. Ah Own,* 85 Cal., 585, the court upheld an instruction which said that the word "play" as used therein did not refer to such persons as play or bet at or against the game, (i. e. those who are enumerated in the latter part of our statute).

The word "play" was specifically construed in the case of *People v. Ah Yem,* 53 Cal., 247, where it was held that one who *played at* or *bet at* a game could not be held to *play* the game in the sense of *conducting, carrying on,* etc. The same

construction is necessary from the principle of *noscitur a sociis.*

It was held in *People* v. *Sam Lung,* 11 Pac., 673, that the statute was not limited to owners and employes, but the purport of the decision is that some one must be conducting, carrying on, or managing the game.

A similar construction has been put upon a similar statute in the State of Washington, *State* v. *Preston,* 95 Pac., 83; *State* v. *Gaasch,* 105 Pac., 817; *State* v. *Hardwick,* 114 Pac., 873. In *State* v. *Gaasch,* the court said:

"The sufficiency of the information is called in question. It will be seen that the information does not charge defendants, either as owners, proprietors, employes, or assistants, or that they had, in any manner such as is made penal by the felony statute, anything to do with the game. As stated in *State* v. *Preston,* 49 Wash., 298, 95 Pac., 82, and *State* v. *Burns,* 102 Pac., 886, the object of the felony statute was to suppress gambling resorts and to punish those who maintained them. Hence, considering the purpose of the law as well as its letter, to sustain a conviction for a felony there must have been some charge of proprietorship. It is not sufficient to say that the one charged merely played or sat in the game, but the information should allege his relation as owner, proprietor, employe or as assistant to one who sustains a prescribed relation to the game. The authorities sustain this view. *State* v. *Dennison,* 60 Neb., 157, 82 N. W., 383; *Brazelle* v. *State,* 86 Miss., 286, 38 South, 314."

That the word "play" was not intended to apply to a person who merely took a hand or bet at the game is evident from the use of the words "play at" or "bet," used in the latter part of the section. *People* v. *Sam Lung,* 11 Pac., 673, *supra.* If the Legislature had intended to prohibit all classes of gambling it could have forbidden anyone from playing any game of chance for money. *State* v. *Bryant,* 2 S. W., 837.

It is evident from an examination of the foregoing cases, that the object sought was the suppression of all games mentioned in the statute where some person conducted, opened or managed the game in which he or some other person ob-

tained a profit or gain by the mere fact of such opening, man-
aging or conducting. In all the convictions in the Pacific
states, the act charged has been a public one or a banking
game like *faro*.

Section 299 of our Penal Code remained in force until the
year 1908, when the statute added the word "poker" to the
list of prohibited games. "Poker" may be played without a
banker, conductor or manager, and the game is generally so
played privately or at a club, the deal successively passing
to each one of the players. The game, however, may be
played in such a way that a person, as owner or proprietor or
banker, may obtain a profit or a gain by extracting a certain
percentage from each of the hands played or derive some
other advantage, and so bring the game within the prohibition
of the statute. As the Legislature added the word "poker,"
and in no other way changed the character of the act, the
principle of *noscitur a sociis* which we shall discuss later is
applicable. Finally in 1910 the Legislature passed the Act
which is as follows:

"Section 1.—That section 299 of the Penal Code is hereby
amended so as to read as follows:

" 'Section 299.—That every person who deals, plays or carries
on, opens or causes to be opened, or who conducts, either as owner
or employe, whether for hire or not, any game of *faro, monte,* roulette,
fan-tan, poker, seven-and-a-half, twenty-one, hokey pokey, or any game
of chance played with cards, dice or any device for money, checks,
credit, or other representative of value, and every person who plays
or bets at or against any of the said prohibited games, is guilty of
a misdemeanor and shall be punishable by a fine not exceeding five
hundred dollars, or by imprisonment in jail not exceeding six months,
or by both such fine and imprisonment.

" 'If a person makes oath before a justice of the peace, municipal
or district judge, that he believes, or has probable cause to believe,
that a house or other building, room or place, is unlawfully used as
and for a common gaming-house, for the purpose of gaming for
money or other property, or is occupied, used or kept for promoting
a lottery, or for the sale of lottery tickets, or for promoting the

game known as "policy lottery" or "policy," and that persons resort to the same for any such purpose, such justice of the peace, or municipal or district judge, shall, in case satisfactory evidence is presented, issue a warrant commanding any marshal or police officer to enter such house, building, room or place, and to arrest the keepers thereof, all persons in any way assisting in keeping the same, whether as janitor, door-keeper, watchman, or otherwise, all persons who are there found participating in any form of gaming, and all persons present, whether so participating or not, if any lottery tickets or other implements, apparatus or materials of any form of gaming are found on said place, and to take into their custody all of the implements, apparatus or materials of gaming as aforesaid, and to keep said persons, implements, apparatus or materials, so that they may be forthcoming before some court or magistrate, to be dealt with according to law. All articles and property seized under the provisions of this section, except money, shall, upon evidence before the court that such articles and property were used for gaming purposes, be confiscated and destroyed, and all money so seized shall be covered into the Insular Treasury, in the same manner as fines and costs. The warrant hereinbefore provided shall not be issued but upon probable cause, supported by the affidavit of the complainant, in which affidavit the person or persons accused of violating this section shall be named or described, as well as the house or building to be entered and searched; and the judge to whom application is made for a warrant shall before issuing the same, examine on oath the complainant and any witnesses he may produce, taking the depositions of said witnesses in writing and causing them to be subscribed by the parties making them."

It has been suggested that by adding the words "poker" and "any game of chance" the Legislature sought to prohibit every kind of gambling. It will be seen, however, that the only changes in the main body are the additional words, "or any game of chance," and the aforesaid principle of *noscitur a sociis* is controlling. The rule is that where words of particular description in a statute are followed by genera! words that are not so specific and limited, unless there be a clear manifestation of a contrary purpose, the general word or words are to be construed as applicable to persons or things of like kind, as are designated by the particular word or words.

*Miller* v. *State*, 23 N. E., 95. In that case it was held that an indictment under a statute providing that any person who "entices or takes away any female of previous chaste character from wherever she may be, to a house of ill-fame or elsewhere, for the purpose of prostitution" is insufficient unless it avers that the place to which the woman was taken was a house of ill-fame or a place of like character. A mere dwelling house being insufficient, and citing *Berg* v. *Baldwin,* 31 Minn., 541. Other general words have met similar construction in the following cases: *People* v. *Richards,* 108 N. Y., 142–143; *McGaffin* v. *City of Cohoes,* 30 Am. Rep., 309; *Burks* v. *Bosso,* 180 N. Y., 341; *State* v. *Lowry,* 4 L. R. A., N. S., 535; *Sims* v. *U. S. Trust Co.,* 103 New York, 478.

In *State* v. *Bryant,* 2 Southwestern Rep., 837 *supra,* the indictment was based on section 1548 which reads as follows:

"Sec. 1548. *Betting on games.*—Every person who shall bet any money or property upon any gaming table, bank, or device prohibited by the preceding section, or at or upon any other gambling device, or who shall bet upon any game played at or by means of any such gaming table, or other gambling device, or who shall loan or furnish any money or property to any other person to be bet as aforesaid, and the same shall be so used, or who shall, in any manner, be interested in any such playing or betting at such device, shall, on conviction, be adjudged guilty of a misdemeanor, and punished by a fine not exceeding twenty-five dollars, nor less than ten dollars."

The preceding section reads as follows:

"*Keeping gambling device.*—Every person who shall set up or keep any table or gambling device, commonly called A. B. C., farobank, E. O., roulette, equality, keno, or any kind of gambling table or device, adapted, devised, and designed for the purpose of playing any game of chance, for money or property, and shall induce, entice, or permit any person to bet or play at or upon any such gaming table or gambling device, or on the side or against the keeper thereof, shall, on conviction, be adjudged guilty of a misdemeanor, and punished by a fine not exceeding one thousand dollars."

The defendant was charged with having bet a sum of money at and upon a game of chance played with and by means of a target gun and target and also charging that such target gun and target was a gambling device.

The court said: "But, aside from the familiar rule already adverted to, and looking to the bare reason of the case, it cannot be possible that a 'gun and a target' were, within the legislative contemplation, a 'gambling device,' 'adapted, devised, and designed for the purpose of playing any game of chance, for money or property.' If a gun and a target are to be so regarded, a game of marbles would fall equally under the statutory ban. Indeed, under such a latitudinous construction, it is difficult to tell what sports might be interdicted, and what games punished."

The additional words in our statute "game of chance" could have no other object than to prohibit any other game of a like or similar character to the games enumerated, and under the same conditions of dealing, conducting, opening, carrying on, or playing.

If perchance a different policy had prevailed in Porto Rico before the adoption of the California statute and all gambling had been punished here, there might be room for the argument that the Legislature had desired to restore the *status quo.* But the fact is otherwise. Under the Spanish law it was likewise public gaming or a game in which some one derived a special advantage or *barato* that was punished. The traditional policy in Porto Rico is the same as the policy in California. Section 354 of the Penal Code for Cuba and Porto Rico and the judgments of the Supreme Court of Spain of April 13, 1880; December 28, 1887, and January 1, 1889.

The statute, in all its history, is only applicable to such public or quasi-public games; viz., where a person initiates or starts a game as a proprietor, or where gambling is promoted in the same way as if he were such proprietor, as where some one obtains a gain or profit independently or the mere fact of playing at or betting at a game. Additional force is

lent to this view by the added paragraph of the law of 1910. It is only a public gaming house against which the warrant therein described may be directed. We think, therefore, that neither the complaint nor the proof showed the elements prohibited by the statute. There was no charge or proof that any one was specifically *conducting* or dealing a game in the sense of the statute. One can only be guilty of playing or betting at a game when some one is *conducting, carrying on, dealing* or *playing* the game prohibited in the sense in which those words have been interpreted. Merely playing a game of poker in a private house is not within the intent of the statute, provided that there is no one who obtains a "rake-off" (*barato*) or obtains an advantage in any way by maintaining a game or giving the opportunity for play.

Any doubt that may arise must be resolved in favor of the liberty of the individual and the freedom of the defendant. *U. S.* v. *Wiltberger,* 5 Wheaton, 76; *State* v. *Anderson,* 112 Pac., 931; *State* v. *Hardwick,* 114 Pac., 873, *supra; People* v. *Bryant,* 2 S. W., 837.

In the last-named case the court says: "Moreover, the statute being considered is a penal and criminal one, and as such is to be strictly construed. *Howell* v. *Stewart,* 54 Mo., 400; *Kritzer* v. *Woodson,* 19 Mo., 327; *Fusz* v. *Spaunhorst,* 67 Mo., 256; *U. S.* v. *Wilberger,* 5 Wheat., 76. Such statutes are to be strictly construed—that is, construed strictly in those parts which are against defendants, but liberally construed in those which are in their favor; that is, for their ease or exemption. No person is to be made subject to such statutes by implication; and, when doubts arise concerning their interposition, such doubts are to weigh only in favor of the accused. Bish. St. Crimes [2 Ed.]. Secs. 193, 194, 277."

Furthermore, the proof of a game of poker is defective. None of the witnesses swore positively to such a game, but the testimony at most showed men seated around a table playing for chips and exchanging money for chips and that one of them was heard to say "ace full" (full *de ases*). The

elaborate explanation by one of the witnesses that "ace full" belongs to the game of poker does not exclude the possibility of that phrase being, as appellant maintained, the terminology of another game. However, the principal ground for this decision is the failure of either the complaint or the proof to show a prohibited game.

The judgment must be reversed.

*Reversed.*

Chief Justice Hernández and Justice Aldrey concurred.

Mr. Justice del Toro signed, stating that he concurred in the judgment.

Mr. Justice MacLeary dissented.

### CONCURRENT OPINION OF MR. JUSTICE DEL TORO.

My real motive in agreeing to the reversal of the judgment appealed from is that after a careful examination of all the evidence introduced I do not consider it sufficient to warrant the conclusion that the defendant was playing the prohibited game of poker on the date and at the place mentioned in the complaint.

### DISSENTING OPINION OF MR. JUSTICE MACLEARY.

In this case a judgment was rendered by the District Court of San Juan, Section 2, on October 28, 1911, finding the defendants guilty of playing a prohibited game denominated "poker," and imposing upon each one of them the punishment of a $30 fine and the payment of a sixth part of the costs, with alternative imprisonment in case of nonpayment. An appeal was duly taken from this judgment, and the transcript filed in this Court on March 12, 1912. On April 25 following the case was heard before the full bench and taken under advisement. Nearly a year thereafter it is decided in favor of the appellants and the judgment reversed and the prosecution dismissed.

I agree with the majority of the court as to the futility of the plea of former jeopardy, but I dissent on the other three points mentioned—that is to say, (1) the insufficiency of the complaint; (2) the inapplicability of section 299 of the Penal Code to a game played in a private house; and (3) the inadequacy of the proof to support the accusation in this case.

It is not necessary to review the evidence. It is set out in full in the transcript, and I agree with the trial court in considering it sufficient to establish the charge made against the defendants. Moreover the trial judge having all the witnesses before him and hearing the testimony detailed by each was in a better position to form a correct judgment as to the sufficiency of the proof than any of the justices of the appellate court could possibly be merely from an inspection of the record.

There is nothing whatever in the statute itself to show that section 299 of the Penal Code was not intended to apply to every place within the territorial limits of Porto Rico, whether it be a private or a public house, a club or a gaming joint. No exception is made by the statute and courts have no right to make any by construction. The complaint follows the language of the statute closely enough to make the charge clear and unambiguous and to put the defendants on notice as to what they were called upon to answer. The law denouncing gambling was passed in the original draft of the Penal Code which was adopted in Porto Rico in 1902. As originally enacted it did not mention the game of poker, and for several years it was a doubtful question as to whether or not this game was intended to be included within the statute. To set that matter at rest, the Legislature of Porto Rico, in 1910, passed an Amendatory Act making section 299 read as follows:

"That every person who deals, plays or carries on, opens or causes to be opened, or who conducts, either as owner or employe, whether for hire or not, any game of faro, monte, roulette, fan-tan,

poker, seven-and-a-half, twenty-one, hoky-poky or any game of chance played with cards, dice or any device for money, checks, credit or other representative of value, and every person who plays or bets at or against any of the said prohibited games, is guilty of a misdemeanor and shall be punishable by a fine not exceeding five hundred dollars, or by imprisonment in jail not exceeding six months, or by both such fine and imprisonment."

Since the passage of this statute it has been a misdemeanor to play poker in Porto Rico, no matter where it might be played. This is clearly evident from a mere reading of the section quoted. No study is necessary.

Even if the word "poker" had been included in the original Act, this statute would be so plain that a wayfaring man might run and read, but when it is inserted by the Legislature in a special Act, passed for that purpose eight years after the original enactment, the intention of the Legislature is too plain for argument. Poker was certainly intended to be a prohibited game in Porto Rico, and justly so; for, from the very nature of the game itself it cannot be played without betting money, and the object of the game is to win money, and nothing else. I am informed by an expert that poker might possibly be played for tooth-picks; but it never is unless they represent coin of the realm.

The primary canon of construction to which all others must yield is that a Legislative Act is to be interpreted according to the intention of the Legislature apparent upon its face. *United States* v. *Fisher,* 109 U. S., 145; *Jones* v. *The Guaranty Company,* 101 U. S., 625; *Indianapolis Railroad Company* v. *Horst,* 93 U. S., 300; *United States.* v. *Hogg,* 3 Fed. Rep., 294; *United States* v. *Goldenberg,* 168 U. S., 102.

It is also a well established rule of interpretation that *where a law is expressed in plain and unambiguous terms,* whether those terms are general or limited, the Legislature should be held to mean what they have plainly expressed and consequently *no room is left for construction.* This principle was referred to and elaborated by Mr. Justice Lamar in the

case of *Lake County* v. *Rollins*, 130 U. S., 670, and following up in the case of *Dewey* v. *United States*, 178 U. S., 521; *Calderón* v. *Atlas Steamship Company*, 170 U. S., 280; *Yerke* v. *United States*, 173 U. S., 442; *Folson* v. *United States*, 160 U. S., 127; *Thornley* v. *United States*, 113 U. S., 313; *Doggett* v. *Florida Railroad Company*, 99 U. S., 78; *New Lamp Chimney Company* v. *Ansonia Brass Company*, 91 U. S., 663; *Texas* v. *Chiles* (Wallace 21), 88 U. S., 491 and scores of other cases which might be cited.

It is unnecessary and, it might be said, impossible to construe a statute unless it is found to be ambiguous, and no ambiguity whatever is perceptible, except to a microscopic mind, from the language used. in section 299. To attempt to make a judicial construction of such plain and unequivocal language only serves to raise doubts where none before existed and to confuse the judgment of the investigator. It is idle to attempt to prove a self-evident truth. Logic used for such a purpose may mislead or confuse the mind of a person, but it cannot strengthen preexisting convictions of facts which are plainly self-evident. The more that is said about a statute as plain and unequivocal as this, the greater is the confusion that results from the discussion. From the very first day that the question was submitted to this court for my part I have had no doubt in regard to the intent of the Legislature; and the fact that it has required nearly twelve months to construct an opinion by which that intent can possibly be obscured itself shows that the intent is too plain for discussion. In the interpretation of statutes judges should not, while wandering through the wilderness of precedents, forget that they are men but they should follow the faithful guide of common sense like other people.

The Civil Law is in perfect accord with the Common Law on this subject. The same principle, in regard to the interpretation of plain and unambiguous statutes which has been gathered here from the decisions, is expressed in positive language in our Civil Code, which is derived from the

Spanish Code and through it from the Roman Law. In the first chapter thereof which treats of laws, their effects, and the general rules for their application, section 13 enacts in unmistakable terms the precept for our guidance. That section reads as follows:

"Section 13. When a law is clear and free from all ambiguity, the letter of the same shall not be disregarded under the pretext of fulfilling the spirit thereof."

While this statement is embodied in the Civil Code, it applies as well to criminal as to civil laws and no distinction is made between them. In this enactment of our code we find wisdom doubly distilled and concentrated and crystallized into a rule for the government of every court in Porto Rico. I acknowledge its authority and application to the present case and to all cases.

The laws of Porto Rico, as I understand them, are placed on the statute books for the purpose of being executed, and I do not consider it my duty to seek for arguments and to misapply authorities in such a way as to nullify the statutes enacted by the law-making power for the purpose of regulating the conduct of our people in accordance with the dictates of sound morality.

Deeming, as I do, the proof to be sufficient and the statute plain and unambiguous, and the complaint to be drawn in conformity therewith, I have no doubt of the guilt of the defendants; and, in my opinion, the judgment should be affirmed.